*In re* MARRIAGE OF DEBRA ANN LINDSEY-ROBINSON, n/k/a Debra Ann Wakitsch, Petitioner-Appellee, and JON DOUGLAS LINDSEY- ROBINSON, Respondent-Appellant.

First District (1st Division)   No. 1—00—2763

Opinion filed May 13, 2002.—Rehearing denied June 13, 2002.

Jon Douglas Lindsey-Robinson, of Des Moines, Iowa, appellant *pro se*.

Paulette M. Gray, of Riffner, Barber, Scott & Stefanowicz, P.C., of Schaumburg, for appellee.

PRESIDING JUSTICE COHEN delivered the opinion of the court:
Respondent Jon Douglas Lindsey-Robinson appeals *pro se* from orders of the circuit court of Cook County awarding petitioner Debra Ann Lindsey-Robinson contributory attorney fees and granting Debra's motion for entry of an amended qualified domestic relations order (QDRO). On appeal, Jon alleges that the circuit court erred in: (1) accepting a stipulation entered into by the parties with respect to the valuation of Jon's pension plan; (2) approving Debra's proposed amended QDRO with respect to the distribution of the marital portion of Jon's pension plan; and (3) awarding Debra contributory attorney fees after judgment was entered. For the reasons set forth below, we affirm.

## BACKGROUND

Jon and Debra were married on May 5, 1989, in Honolulu, Hawaii. In 1990, Jon legally adopted Debra's minor children: April, born August 29, 1976, and Cody, born May 17, 1978. Debra and Jon lived together in Iowa City, Iowa, until June of 1993, when Debra left the marital home and moved to Illinois with the children. Jon remained in Iowa.

On December 21, 1993, Debra filed a petition for dissolution of marriage in the circuit court of Cook County claiming irreconcilable differences. Over a period of three years, Debra's petition was dismissed for want of prosecution and subsequently reinstated no

fewer than three times. During this time period, Jon also filed a petition for dissolution of marriage in the district court of Polk County, Iowa. On March 4, 1996, the Iowa district court entered a default decree of dissolution of marriage on behalf of Jon. On April 3, 1996, Debra filed a motion to vacate the default order, which was granted on May 16, 1996. Jon then appealed to the Iowa appellate court. On September 24, 1997, the Iowa appellate court issued its decision affirming the district court's order vacating the default judgment. Jon then appealed to the Iowa Supreme Court, which declined to hear his case. Debra's cause was once again reinstated in the circuit court of Cook County and finally, after years of procedural turmoil, trial began on April 13, 1998.

At trial, the parties stipulated as to the valuation of Jon's interest in his Iowa Public Employee's Retirement System (IPERS) defined benefit pension plan. The valuation was based on an April 9, 1998, report drafted by Louis A. Epstein. Mr. Epstein, a certified public accountant, was hired by Jon's attorney to calculate the present value of Jon's pension plan. Mr. Epstein determined that the present value of the pension plan was $159,171. Mr. Epstein divided this total amount into nonmarital and marital portions. Mr. Epstein opined that $66,853 represented Jon's nonmarital portion and $92,318 represented the marital portion.

On May 27, 1998, the circuit court entered a judgment of dissolution of marriage incorporating the stipulated value of Jon's pension plan. The judgment stated that the stipulated marital portion of the pension plan ($92,318) "shall be equally divided between the parties pursuant to an appropriate Qualified Domestic Relations Order." On August 12, 1998, after entry of judgment, the circuit court conducted a hearing on a petition for attorney fees filed on behalf of Debra. The court granted the petition and ordered Jon to contribute to Debra's attorney fees in the amount of $4,250.

On February 8, 1999, Debra's attorney filed a motion to enter a proposed QDRO. It appears that Jon filed a counterpetition to enter his own proposed QDRO. We state "appears" because although Jon's counterpetition is not in the record, it is referenced in a hearing conducted on June 14, 1999, and in a court order dated April 14, 1999. At the June 14, 1999, hearing, the circuit court noted that at an April 14, 1999, hearing Jon argued[1] that the circuit court erred in accepting the parties' stipulation with respect to the valuation of Jon's pension

---

[1]Jon was represented by counsel at trial. On June 15, 1998, Jon's attorney filed a motion to withdraw, which was granted on July 2, 1998. Jon did not file his *pro se* appearance until April 14, 1999.

plan. The court also noted that Jon subsequently withdrew his argument regarding the court's erring in accepting the valuation. Nevertheless, the court chose to rule on the issue rejecting Jon's argument and entering Debra's proposed QDRO.

On July 7, 1999, Jon filed a motion to reconsider and modify the judgment. Jon argued, *inter alia*, that Mr. Epstein "erroneously applied an Illinois based immediate offset approach" to determine the present value of Jon's pension plan resulting in Debra obtaining a share of the plan in excess of the circuit court's judgment. Jon subsequently filed a motion to dismiss his prior motion to reconsider and modify the judgment, which was granted on September 10, 1999. Meanwhile, on July 12, 1999, Charlotte Schipper, QDRO administrator of IPERS, informed the parties that the QDRO submitted on June 22, 1999, was rejected because it did not comply with the provisions of the IPERS plan.

On March 20, 2000, Debra's attorney filed a motion to enter an amended QDRO. The amended QDRO contained the following formula for IPERS to implement in distributing to Debra her half of the marital portion of Jon's pension plan: "50% of the gross monthly or lump sum benefit payable at the date of distribution to the Member multiplied by the 'service factor.' The numerator of the service factor is 66.48 (quarters); and the denominator is the Member's total quarters of service covered by IPERS."[2] On April 10, 2000, Jon filed a "Motion to Deny Motion to Enter QDRO," arguing that the amended QDRO "may be fruit from a poisonous tree," "lacks integrity" and "contains segments that do not comply with 735 ILCS 5/503 and ordinary common sense."

On July 18, 2000, the circuit court granted Debra's motion for entry of the amended QDRO. The court also granted Debra's motion for postjudgment attorney fees and ordered Jon to pay $1,046.20 to Debra's trial attorney. This appeal followed.

## ANALYSIS

■ Initially, we address Debra's motion to strike Jon's brief and dismiss his appeal pursuant to Supreme Court Rules 341 (177 Ill. 2d R. 341) and 342 (155 Ill. 2d R. 342). Jon filed an objection and we ordered the motion be taken with the case. We note that most of the

---

[2]Debra's attorney calculated the "service factor" by implementing the following formula: marital portion + nonmarital portion = total pension value ($92,318 + $66,853) = $159,171); marital portion / total pension value = marital percent ($92,318 / $159,171 = .58); total years of service x marital percent = year factor (28.66 x .58 = 16.62); year factor x 4 = quarterly service factor (16.62 x 4 = 66.48).

deficiencies in respondent's brief of which Debra complains were remedied on February 19, 2002, when Jon filed a supplemental record containing missing trial transcripts. We do agree with Debra, however, that some of the commentary in Jon's "statement of facts" section is argumentative and unsupported by the record in violation of Supreme Court Rule 341(e)(6). 177 Ill. 2d R. 341(e)(6). Nevertheless, we deny Debra's motion to strike Jon's brief and dismiss his appeal. Suffice it to say, that although we are denying Debra's motion, we will consider only those parts of Jon's "statement of facts" that are proper. The parts that are improper will not impact our decision in this case. See *People v. Tolbert*, 323 Ill. App. 3d 793, 796 (2001); *Goodwin v. McHenry County Sheriff's Department Merit Comm'n*, 316 Ill. App. 3d 1238, 1242 (2000).

### 1. Stipulation

Jon first argues that the circuit court erred in accepting the stipulation entered into by the parties with respect to Mr. Epstein's valuation of Jon's IPERS pension plan. Jon asserts for the first time on appeal that the stipulation improperly classified his pension plan as both marital and nonmarital. According to Jon, the existence of his pension plan for 20 years prior to the marriage supports his assertion that the pension should be classified as nonmarital property and be awarded solely to him. Jon also asserts that Mr. Epstein's calculation contains mathematical errors, both contrary to general accounting principles and Illinois law, which resulted in an "overly large" marital portion. Jon claims that these errors combined render the entire stipulation unconscionable.

■ An issue is waived on appeal unless a timely objection is made at trial and is specifically raised in a written posttrial motion. *People v. Reid*, 136 Ill. 2d 27, 38 (1990). Our supreme court has outlined two purposes behind the waiver rule. "First, timely objections allow the circuit court to promptly correct any error. [Citation.] Second, a party who fails to object cannot obtain the advantage of receiving a reversal by failing to act." *Reid*, 136 Ill. 2d at 38.

■ The record reveals that Jon was present in court when his attorney entered into the stipulation with respect to the value of his IPERS pension plan. Jon never voiced an objection to the stipulation, nor did he ever inform the circuit court that he misunderstood or questioned any part of the stipulation. On July 7, 1999, Jon filed a motion to reconsider and modify the judgment arguing, among other things, that Mr. Epstein "erroneously applied an Illinois based immediate offset approach" in determining the present value of Jon's pension plan. No argument was made concerning the classification of the

pension plan as both marital and nonmarital. Moreover, Jon's posttrial motion was subsequently dismissed on Jon's own motion on September 10, 1999, and never addressed by the circuit court. Thus, Jon has failed to properly preserve these issues and they are waived for purposes of our review. See *Hubbard v. Sherman Hospital*, 292 Ill. App. 3d 148, 156 (1997); *Parson v. City of Chicago*, 117 Ill. App. 3d 383, 390-91 (1983).

## 2. QDRO

■ Jon asserts that the circuit court, in its June 14, 1999, oral ruling, misapplied *In re Marriage of Hunt*, 78 Ill. App. 3d 653 (1979), as authority for accepting Debra's proposed QDRO. Although the circuit court cited *Hunt* with respect to Debra's first proposed QDRO, that QDRO was subsequently rejected by IPERS. Consequently, Debra offered a proposed *amended* QDRO on March 20, 2000, which was accepted and entered by the circuit court on July 18, 2000. Unfortunately, the circuit court's order does not state its reasons for approving Debra's amended QDRO. Jon has failed to provide us with a transcript of the circuit court's oral ruling, indeed if there was such an oral ruling, on Debra's motion to enter the amended QDRO. Without any record, we are unable to determine whether the circuit court relied on the *Hunt* decision at all, let alone erroneously, when accepting Debra's amended QDRO. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). "[I]n the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *O'Bryant*, 99 Ill. 2d at 392.

■ Jon next argues that the circuit court erred in accepting Debra's proposed amended QDRO with respect to the distribution of the marital portion of Jon's pension plan. According to Jon, the formula provided in paragraphs 5 and 6 of the amended QDRO contains a mathematical error resulting in "unconscionable privileges to the Debra." Specifically, Jon disputes the use of 16.62 as the "year factor" where the parties were only married for a total of 9 years.

The circuit court's judgment for dissolution of marriage ordered that the stipulated marital portion of Jon's pension plan ($92,318) be "divided equally between the parties pursuant to an appropriate Qualified Domestic Relations Order." After the initial QDRO was rejected by IPERS, Debra's attorney filed a motion to enter an amended QDRO. Paragraph 5 of the amended QDRO contained the following formula for IPERS to implement in distributing to Debra her marital portion of Jon's pension plan: "50% of the gross monthly or lump sum benefit

payable at the date of distribution to the Member multiplied by the 'service factor.' The numerator of the service factor is 66.48 (quarters); and the denominator is the Member's total quarters of service covered by IPERS." Paragraph 6 consists of the formula used to determine the "service factor."

The stipulated marital portion of Jon's pension plan is $92,318. The circuit court ordered the stipulated marital portion to be divided equally between the parties. Thus, Jon should receive $46,159 of the stipulated marital portion of the pension plan and likewise Debra should receive $46,159 of the stipulated marital portion of the pension plan. Paragraph 5 of the amended QDRO directs IPERS to pay Debra half of the stipulated marital portion of Jon's pension plan, or $46,151.[3] This represents an $8 difference from the circuit court's judgment in Jon's favor. We find this difference to be *de minimis* and remand on this basis to be unnecessary.

■ Jon makes two additional contentions with respect to Debra's proposed amended QDRO: (1) "the QDRO sets a frozen compensation rate based upon an erroneous stipulation"; and (2) "the QDRO does not consider improvements to the pension not attributable to the marriage." We agree with Debra that Jon's general reference to the issues above, unsupported by citation to authority, fails to merit our consideration on appeal. See *Hutchings v. Bauer*, 212 Ill. App. 3d 172, 183 (1991), *rev'd on other grounds*, 149 Ill. 2d 568 (1992).

### 3. Attorney Fees

Lastly, Jon argues that the circuit court erred in awarding Debra contributory attorney fees after judgment was entered. Jon also contests the circuit court's award of postjudgment attorney fees to Debra, but states in his brief that he disputes this issue only "if the dismissal [of Jon's motion to reconsider and modify judgment] with prejudice impacts this appeal." Jon asserts that if the order dismissing his motion to reconsider and modify judgment with prejudice "does not affect this appeal," then his argument is moot. Because we find no error in the circuit court's dismissal, at Jon's own request (of Jon's motion to reconsider and modify judgment), we address only Jon's argument as to the circuit court's August 12, 1998, order granting Debra $4,250 in contributory attorney fees.

■ Jon claims that any award of contributory attorney fees should have been made, pursuant to section 503(j) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(j) (West 1998)), prior to entry of judgment. More artfully framed, Jon argues that

---

[3].50 x $159,171 x $\frac{66.48}{114.64}$= $46,151

because Debra's petition was untimely filed, the circuit court lacked subject matter jurisdiction to grant the petition, thus rendering its order void. Section 503(j), added to the Act in 1997, states in part:

> "After proofs have closed in the final hearing on all other issues between the parties (or in conjunction with the final hearing, if all parties so stipulate) and *before judgment is entered*, a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided ***." (Emphasis added.) 750 ILCS 5/503(j) (West 1998).

Here, judgment was entered on May 27, 1998; however, it was not until August 12, 1998, that the circuit court conducted a hearing on a petition for attorney fees filed on behalf of Debra. The court ultimately granted the petition and ordered Jon to contribute to Debra's attorney fees in the amount of $4,250, but not without reservation. During its oral ruling, the circuit court stated the following:

> "THE COURT: *** Since we are talking about the statute, I might further add that in the future both myself and the lawyers need to make sure that we do these contribution hearings *before I enter judgment. The statute is extremely clear this hearing should have been done prior to my entering the judgment.*
>
> There is no remedy provided for that. *I will hold that any objection is waived, since nobody objected to it.* Nevertheless, that is a specific statute. I have ruled on the issues." (Emphasis added.)

We agree with both the trial judge and Jon that "under section 503(j) of the Act, a petition for attorney fees must be heard and decided before the final judgment is entered." *In re Marriage of Konchar*, 312 Ill. App. 3d 441, 443-44 (2000). Under the Act, a judgment for dissolution of marriage becomes final "when entered." 750 ILCS 5/413(a) (West 2000). Because Debra did not file her petition for attorney fees until after the judgment for dissolution was entered in this matter, her petition was clearly untimely pursuant to section 503(j) of the Act.

■ Finding Debra's petition untimely pursuant to section 503(j) does not, however, end our analysis of the issue. Despite the untimeliness of Debra's petition for contributory attorney fees, the circuit court granted the petition, stating that because no objection had been made, the issue of untimeliness was waived. Thus, the narrower issue for our review is whether the timing requirement in section 503(j) of the Act may be waived.

Recently, our supreme court rejected a long line of precedent, including its own, holding that "the legislature, in defining a justiciable matter, may impose 'conditions precedent' to the court's exercise of jurisdiction that cannot be waived. [Citations.]" *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335-36 (2002). The court found such precedent contrary to article VI of the Illinois Constitution and reasoned:

"Characterizing the requirements of a statutory cause of action as nonwaivable conditions precedent to a court's exercise of jurisdiction is merely another way of saying that the circuit court may only exercise that jurisdiction which the legislature allows. We reiterate, however, that the jurisdiction of the circuit court is conferred by the constitution, not the legislature. Only in the area of administrative review is the court's power to adjudicate controlled by the legislature. [Citations.]" *Belleville Toyota*, 199 Ill. 2d at 336.

Following *Belleville Toyota*, we must find that the timing provision of section 503(j) of the Act, although mandatory (see *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001) (holding that the legislature's use of "shall" demonstrates its intent to create a mandatory, rather than directive, provision)), is not a jurisdictional prerequisite and thus may be waived. Here, not only did Jon fail to object to the untimeliness of Debra's petition for contributory attorney fees, he also substantively argued the merits of the petition before the circuit court. Jon has waived the issue of contributory attorney fees on appeal.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNULTY and COUSINS, JJ., concur.