*In re* MARRIAGE OF DANA L. ALLEN, Petitioner-Appellee, and ROBERT W. ALLEN, Respondent-Appellant.

Third District    No. 3—02—0623

Opinion filed October 1, 2003.

George Mueller (argued), of Ottawa, for appellant.

Harry C. McSteen (argued), of McSteen Law Firm, P.C., of Joliet, for appellee.

PRESIDING JUSTICE McDADE delivered the opinion of the court:

This appeal is from the entry of an order in the circuit court of Will County amending a qualified domestic relations order (QDRO) previously entered in this matter. The respondent argues that the trial court lacked jurisdiction to enter the amended order, and also asserts that the original judgment in this case did not reflect the true intent of the parties. For the following reasons, we affirm the entry of the amended QDRO, finding that the judgment accurately reflected the parties' intent.

## FACTS

The petitioner, Dana Allen, and respondent, Robert Allen, were divorced on October 6, 1995, after 18 years of marriage. The judgment of dissolution called for the division of the respondent's Commonwealth Edison pension fund between the two parties pursuant to a formula stated in the judgment.

The formula stated that the pension fund would be divided along the following lines:

> "Plan benefit, including any early retirement incentive, or survivorship benefit, multiplied by one-half (1/2) and the product thereof multiplied by a fraction, the numerator of which is 216 and the denominator of which is the number of months during which any contributions to the plan were made for the benefit of Participant, up to the time when benefits are requested."

The number 216 was understood to be the number of months that the parties were married.

On October 17, 1995, the court entered a QDRO enforcing the terms of the judgment. The provision in the order dealing with the division of the respondent's pension called for the calculation of petitioner's share as:

> "50% of the vested benefits accrued by Participant under the Plan as determined as of October 6, 1995, multiplied by a fraction, the numerator of which is the number of months the Participant and Alternate Payee were married (i.e. 170 months) and the denominator of which is the number of months during which the Participant accrued benefits under the Plan as of October 6, 1995."

The change of the numerator of the fraction from 216 to 170 was required due to the mutual mistake of the parties in the original judgment that the numerator should be the total length of the marriage, rather than the number of months during the marriage in which the respondent collected benefits under the plan. The number 170 reflects the latter, despite the language in the order stating that the number reflects the months that the parties were married, and was agreed by both parties to be the correct numerator.

Following the respondent's retirement, the petitioner applied for benefits under the pension plan. The pension administrator calculated the respondent's share of the plan based on the formula contained in the QDRO, rather than that contained in the judgment itself. When the petitioner discovered the difference between the formulae, she initiated the present petition to amend the QDRO to reflect the formula contained in the judgment.

The trial court granted the petition and entered the modified order. The provision in the amended QDRO relating to the division of the pension states that the petitioner's share should be calculated by:

> "multiplying the Participant's Accrued Benefit by a Coverture Fraction (less than or equal to 1.0), the numerator of which is the number of months of the Participant's participation in the Plan earned during the marriage (from August 18, 1981 to October 6, 1995), and the denominator of which is the total number of months of the Participant's participation in the Plan as of the earlier of his date of cessation of benefit accruals or the date that Alternate Payee commences her benefit hereunder."

The respondent appeals from the entry of the modified order.

## ANALYSIS

■ The respondent first argues that the trial court did not have jurisdiction to enter the amended QDRO. He contends that the modification of the QDRO is equivalent to the modification of the judgment, and that the trial court loses jurisdiction to modify an order more than 30 days after the original entry of the order. The petitioner counters that the amended QDRO is not a modification of the judgment but, rather, a change necessary to enforce the judgment that was originally entered. Whether the trial court retained jurisdiction to enter the amended QDRO is a question of law that we will review *de novo*. *Woods v. Cole*, 181 Ill. 2d 512, 516, 693 N.E.2d 333, 335 (1998).

■ We find that the amended QDRO is necessary to enforce the original judgment and is not a modification thereof. Although no case law directly addresses the issue, existing authority hints that the modification of a QDRO is allowed after the time for modification of judgments has passed. In *In re Marriage of Lindsey-Robinson*, 331 Ill. App. 3d 261, 266-67, 771 N.E.2d 976, 980 (2002), the trial court allowed the entry of an amended QDRO when the original order was found to be defective. However, the jurisdiction of the court to amend the order was not contested in that case.

Nevertheless, we believe the court has jurisdiction to amend a QDRO to conform it to the judgment. Although the trial court loses jurisdiction to amend a judgment after 30 days from entry, it retains indefinite jurisdiction to enforce the judgment. *In re Marriage of Hub-*

*bard*, 215 Ill. App. 3d 113, 116, 574 N.E.2d 860, 862 (1991): The judgment in this case specified a formula for use in determining the petitioner's share of the respondent's pension. The original QDRO contained a different formula. The amendment to the QDRO changed the formula to conform to the judgment. This change did not impose new or different obligations on the parties. The rights and obligations of the parties vested when the judgment became final. *Hubbard*, 215 Ill. App. 3d at 116, 574 N.E.2d at 862. The amendment to the QDRO was necessary to enforce the petitioner's rights and obligations with respect to the pension. Since the amended order only enforced the provisions of the judgment, the court had jurisdiction to make the modifications.

The respondent also argues that the formula contained in the judgment does not reflect the true intent of the parties and that the parties' intent was actually to divide the pension based on the formula contained in the first QDRO. Whether the judgment of dissolution reflected the actual intent of the parties is a question of contract and is also reviewed *de novo*. *Gray v. Mundelein College*, 296 Ill. App. 3d 795, 803, 695 N.E.2d 1376, 1386 (1998).

The respondent urges this court to consider parol evidence that allegedly indicates that the parties agreed on the formula contained in the first QDRO. The trial court, however, properly chose not to consider the evidence offered by the respondent. When the language of a divorce settlement is contained in or incorporated into the judgment of divorce, and where that language is clear and unambiguous, the intent of the parties is determined solely from the language of the agreement. *In re Marriage of Sawyer*, 264 Ill. App. 3d 839, 846, 637 N.E.2d 559, 563 (1994).

The trial court found the language of the judgment to be unambiguous. This determination is not against the manifest weight of the evidence. The language clearly states the formula to be used to divide the respondent's pension. There was no need to admit parol evidence to determine the intent of the parties, since that intent is clear from the face of the agreement. The trial court properly excluded such evidence and found that the judgment reflected the true intent of the parties.

## CONCLUSION

We find it was not error for the trial court to enter an amended qualified domestic relations order to correct the formula used to divide the respondent's pension when the formula in the original order did not conform to that contained in the judgment. The entry of the new order was not a modification of the judgment, which the trial court no

longer has jurisdiction to do after 30 days from entry, but was rather a measure necessary to enforce the judgment, an act subject to indefinite jurisdiction. We also find that the original judgment was unambiguous and that the trial court properly refused to hear parol evidence concerning the alleged true intent of the parties. We therefore affirm the circuit court of Will County.

Affirmed.

BARRY and SLATER, JJ., concur.