907 So.2d 546 (2005)
Linda Gayle SELF, Appellant,
v.
John Daniel SELF, Appellee.
No. 2D04-1486.
District Court of Appeal of Florida, Second District.
June 10, 2005.
Rehearing Denied August 4, 2005.
Virginia R. Vetter, Tampa; and Dominic J. Baccarella of Baccarella & Baccarella, Tampa, for Appellant.
Karol K. Williams of Karol K. Williams, P.A., Tampa, for Appellee.
DAVIS, Judge.
Linda Gayle Self, the Former Wife, appeals the final summary judgment entered against her in proceedings initiated to address her motion to modify the Qualified Domestic Relations Order ("QDRO") that was entered in conjunction with the parties' final judgment of dissolution of marriage. We reverse.
John Daniel Self, the Former Husband, and the Former Wife sought a dissolution of their marriage in 1999. Prior to the final hearing, the parties entered into a settlement agreement by which the Former Wife was awarded "full ownership" of "her percentage of the [Former] Husband's State of Florida Retirement as *547 stated in the QUADRO [sic] (currently calculated at $537.08 per month)." This agreement was filed with the trial court on November 15, 1999, and was ratified by and incorporated by reference into the final judgment of dissolution of marriage dated December 3, 1999. The final judgment did not specifically refer to the QDRO.
In March 2003, the Former Wife filed a motion to modify the QDRO, asking the court to conform it to the terms of the settlement agreement, which had described the retirement award in terms of equitable distribution, not alimony. Specifically, she challenged the wording contained in the QDRO that conditioned payment of her share of the Former Husband's retirement on contingencies that rendered the award more in the nature of alimony than equitable distribution. The QDRO stated: "The Plan Administrator, the Director of the Division of Retirement of the State of Florida, is hereby ordered and directed to make the payments provided for herein until either the Participant or Alternate Payee dies, Alternate Payee re-marries [sic], or until further order of this Court, whichever occurs first." The Former Wife asked the trial court to modify the QDRO by deleting these contingencies.
After initially filing a motion to dismiss and an answer, the Former Husband moved for summary judgment, alleging that due to the Former Wife's failure to timely appeal the final judgment or make a timely motion for relief from judgment pursuant to Florida Rule of Civil Procedure 1.540, the Former Wife was barred by law from now attacking the QDRO.
At the hearing on the motion for summary judgment, the arguments focused on the time allotted by rule 1.540 and whether that time began to run upon the entry of the final judgment and the QDRO or whether it began to run when the Former Wife discovered the problem language. The Former Husband argued that the Former Wife approved the QDRO at the final hearing and that she either knew or should have known of the language at that time. The Former Wife, however, argued that the Former Husband prepared the QDRO, that he told her that it could not be changed, and that factual issues remained as to whether he had committed fraud. The Former Wife maintained that because neither party was represented by counsel at the final hearing, and because the hearing was held on the uniform motions calendar, the trial court's handling of the dissolution, which had been resolved by agreement, was superficial at best and she was vulnerable to being misled by the Former Husband's actions. The Former Husband responded that even if this were the case, rule 1.540 limits relief in the case of fraud to one year from the entry of judgment, making the Former Wife's motion untimely. The trial court accepted the Former Husband's reasoning and granted the final summary judgment.
On appeal, the Former Wife argues that although it was improperly titled as a motion to modify, her motion was not brought pursuant to rule 1.540 but was actually brought as a motion to enforce the terms of the settlement agreement. She maintains that although the agreement had awarded her "full ownership" of an interest in the Former Husband's retirement, the QDRO improperly failed to effectuate the "full ownership" language because it conditioned that ownership on her remaining unmarried and alive. Since this did not implement the terms of the agreement, she argued that the trial court had jurisdiction to amend the language of the QDRO as a means of enforcing the terms of the agreement, which had been ratified and adopted by the final judgment.
*548 In response, the Former Husband argues that even though the trial court reserved jurisdiction to enforce the final judgment, the provision of the agreement adopted by the final judgment that is the subject of the Former Wife's motion was modified by the QDRO that was entered by the trial court on the same day as the final judgment. Specifically, the Former Husband points to paragraph 15 of the QDRO, which states: "Except as modified by this Order, all provisions set forth in the Final Judgment of Dissolution of Marriage dated () shall remain in full force and effect." The Former Husband maintains that the conditions contained in the QDRO thus modified the terms of the settlement agreement and that paragraph 15 demonstrates that the parties and the trial court intended the terms of the QDRO to be the terms of the final judgment.
We reject the Former Husband's argument and the trial court's conclusion. The Former Wife's motion was not brought pursuant to rule 1.540. While it was improperly styled as a motion to modify, the allegations directed the trial court's attention to the issue of whether the QDRO properly carried out the terms of the agreement that was ratified by and incorporated into the final judgment of dissolution. The QDRO itself states that the order was drawn pursuant to state laws "regarding The [sic] equitable distribution of marital property (as that term is defined therein) between spouses in an action for dissolution of marriage." In fact, at the hearing, the Former Husband's counsel argued that the provision of the settlement agreement was in the nature of equitable distribution.[1] Our reading of the agreement leads us to conclude that the parties intended the distribution to include "full ownership" of a percentage of the Former Husband's retirement benefit. Limitations regarding the Former Wife's marital status or the length of her life are not consistent with such full ownership.
We reject the Former Husband's argument that paragraph 15 effectively reduced the full ownership award to a limited interest. The QDRO was not referenced by or incorporated into the final judgment. Accordingly, the qualifying language cannot be read as a term of the final judgment. Once the trial court entered the final judgment, any subsequent order modifying the terms of that judgment required at least some showing of due process such as a hearing or a stipulated modification agreement. There is no record evidence, nor has any argument been made, that a separate hearing was held on the terms of the QDRO. Although the Former Husband has suggested to the contrary, there is nothing in the record that suggests the modification was by stipulation or acquiescence. Paragraph 15, without more, is not a proper basis to support the finding that the QDRO modified the terms of the settlement agreement that were incorporated by reference into the final judgment.
Having determined that the trial court erred in limiting its consideration of jurisdiction to the time period prescribed by rule 1.540 and having also determined that the QDRO is in fact inconsistent with the terms of the final judgment, we conclude that the trial court had jurisdiction to consider the request to modify the terms of the QDRO to properly enforce the terms of the final judgment. Since the final judgment itself reserved jurisdiction for *549 enforcement of its terms, the trial court erred in granting final summary judgment for the Former Husband and should have considered the motion as a request to enforce the final judgment. See Janovic v. Janovic, 814 So.2d 1096, 1101 (Fla. 1st DCA 2002) ("A trial court, however, retains jurisdiction to enforce a final dissolution judgment. Where a party only seeks to receive what is contemplated by the property settlement agreement incorporated into the final dissolution judgment, the relief sought is enforcement rather than modification." (citations omitted)).
Reversed and remanded for further hearings on the motion.
STRINGER, J., Concurs.
ALTENBERND, C.J., Concurs with opinion.
ALTENBERND, Chief Judge, Concurring.
I concur in this opinion. I write merely to explain an additional factor that makes this case relatively unique. This couple was unrepresented during the underlying divorce proceeding. The husband worked for the State of Florida, but he did not obtain or use any QDRO that was a standard form utilized by the State of Florida. The language that he added to the QDRO that purports to instruct the Plan Administrator to terminate payments upon Ms. Self's remarriage is non-standard language that the Plan Administrator does not seek to enforce.
Mr. Self, in the prejudgment settlement agreement, unequivocally agreed that Ms. Self would receive "full ownership of . . . her percentage of the Husband's State of Florida Retirement as stated in the QUADRO [sic] (currently calculated at $537.08 per month)." The final judgment ratified this settlement and made it a part of the final judgment. Thus, at this point in time, Mr. Self has no interest in Ms. Self's share of the retirement fund. Neither Ms. Self nor the State of Florida wishes to enforce the odd language that he inserted into the QDRO as a layperson untrained in the law. Given that Mr. Self has permanently divested himself of ownership of this portion of the retirement fund, I fail to see how he has any standing to object to a clarification of the order to make it consistent with the employer's general policies. This is really a matter between Ms. Self and the State of Florida.
NOTES
[1] Counsel argued that since this was equitable distribution and not alimony, it was not subject to modification.