Sharon Gail ROBINSON,
Appellant–Petitioner,

v.

James David ROBINSON,
Appellee–Respondent.

No. 06A01–0510–CV–458.

Court of Appeals of Indiana.

Dec. 12, 2006.

Audrey K. Grossman, Miroff, Cross & Woolsey, Indianapolis, IN, Attorney for Appellant.

Andrew Z. Soshnick, Amanda R. Blystone, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Jim ("Husband") and Sharon ("Wife") Robinson's marriage was dissolved by the Boone Superior Court in 1994. In 2005, Husband filed a Verified Petition to Amend Qualified Domestic Relations Order ("QDRO") alleging that Wife was receiving a higher share of Husband's monthly pension benefit than she was entitled to receive under the parties' settlement agreement. The trial court granted Husband's petition. Wife appeals arguing that the trial court exceeded its jurisdiction and improperly modified the parties' settlement agreement when it amended the QDRO. Concluding that the trial court's amendment of the QDRO constitutes an improper modification of the parties' settlement agreement and dissolution decree, we reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

Husband's and Wife's marriage was dissolved on July 1, 1994. Husband was employed by Eli Lilly & Co. ("Lilly") throughout the marriage and was vested in the Lilly Pension Plan before the dissolution proceeding was filed. The terms of the parties' property settlement agreement provided that Wife was entitled to receive a portion of Husband's monthly benefit under the Lilly Pension Plan. Specifically, the agreement states in pertinent part:

> As part of the division of the parties' martial estate, the Wife shall be entitled to receive a portion of the Husband's monthly benefit under the Eli Lilly and Company Pension Plan. The Wife's entitlement to a portion of the Husband's monthly benefit under that plan shall be calculated by application of the coverture formula (the number of months the parties' marriage existed divided by the number of months of the Husband's active service as of the date the Wife begins receiving a benefit multiplied by .50 and multiplied by the Husband's entire monthly retirement benefit), *with the express condition that under no circumstances shall the Wife be entitled to receive more than One Thousand Four Hundred Twenty–Three Dollars ($1,423.00) monthly as her share of the Husband's monthly benefit, regardless of the amount computed under the coverture formula.* The Wife shall have all options to claim her benefits which are available to her under the terms of the plan.

Appellant's App. pp. 22–23 (emphasis added).

On December 16, 1994, the trial court issued a QDRO, which had been approved by the parties. The QDRO provides in pertinent part:

> The Participant assigns to the Alternate Payee, the actuarial equivalent to a portion of the Participant's monthly retirement benefit under the Plan, as determined under the provisions of the Plan at the time of the distribution. The actuarial equivalent shall be determined by application of the coverture formula (the number of months the Participant's and Alternate Payee's marriage existed (223) divided by the number of months of the Participant's active service with the employer as of the date the Alternate Payee begins receiving a monthly retirement benefit (X) multiplied by .50 and multiplied by the Participant's entire monthly retirement benefit under the Plan (Y) [223/X × .50 × Y], *with the express condition that under no circumstances shall the Alternate Payee be*

*entitled to receive more than One Thousand Four Hundred Twenty–Three Dollars ($1,423.00) monthly as her share of the Participant's monthly retirement benefit, regardless of the amount calculated under the coverture formula.* The Alternate Payee shall receive her interest in the form of a monthly annuity payable for her lifetime, commencing when the Participant may commence receiving a monthly retirement benefit.

Appellant's App. pp. 43–44 (emphasis added).

In 2001, Lilly ceased administering its own pensions and hired an outside consulting firm to handle the processing and administration of QDROs. In May 2001, Wife began receiving her share of Husband's Lilly pension in the amount of $1423 per month. Husband continued to work for Lilly until December 2004. Upon his retirement, Husband discovered that his pension was being reduced by $1686 per month to fund Wife's share of $1423 per month.

On May 31, 2005, Husband filed a Verified Petition to Amend Qualified Domestic Relations Order. In the petition, Husband asserted,

[t]he deduction of $1686.00 from [Husband's] monthly pension benefit in order to pay [Wife] $1423.00 is inconsistent with both the [Settlement] Agreement, the prior interpretation of the QDRO by Lilly, and the terms and intent of the parties.... By current interpretation, [Wife] effectively is receiving $1686.00 of [Husband's] monthly pension benefit—in

direct contravention of the Agreement's $1423.00 limitation.

Appellant's App. p. 49.

On June 7, 2005, Wife unsuccessfully moved for judgment on the pleadings. A hearing was then held on Husband's petition on September 2, 2005. On September 21, 2005, the trial court granted Husband's petition and ordered Husband to "tender to the Court an Amended Qualified Domestic Relations Order providing that [Husband's] monthly pension benefit shall not be reduced by more than $1423.00 and that [Wife] shall receive the resulting benefit there from." Appellant's App. pp. 2, 59. Wife now appeals.[1] Additional facts will be provided as necessary.

**Discussion and Decision**

■■■ In dissolution proceedings, parties are free to enter into settlement agreements and such agreements are contractual in nature and binding.[2] *Niccum v. Niccum,* 734 N.E.2d 637, 639 (Ind.Ct. App.2000). Moreover, "[a] property settlement agreement incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent." *Myers v. Myers,* 560 N.E.2d 39, 42 (Ind. 1990). *See also* Ind.Code § 31–15–2–17 (1998).

■■■ However, "a dissolution court may exercise continuing jurisdiction to re-examine a property settlement where 'the nature of which is to seek clarification of a prior order.'" *Fackler v. Powell,* 839 N.E.2d 165, 167 (Ind.2005) (quoting *Thomas v. Thomas,* 577 N.E.2d 216, 219 (Ind. 1991)). "This jurisdictional grant to a dis-

---

1.  Pursuant to Wife's motion, the trial court stayed the entry of the amended QDRO pending appeal. Appellant's App. p. 1.

2.  "General rules applicable to construction of contracts govern construction of settlement agreements." *Niccum v. Niccum,* 734 N.E.2d 637, 639 (Ind.Ct.App.2000). "The interpreta-

tion and construction of contract provisions is a function for the courts." *Id.* Our standard of review is essentially the same as that employed by the trial court. "Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning." *Id.*

solution court is warranted as an extension of 'the necessary and usual powers essential to effectuate the marital dissolution, which includes the power to interpret the court's own decree.'" *Id.* (quoting *Behme v. Behme,* 519 N.E.2d 578, 582 (Ind.Ct. App.1988)). "[D]issolution courts retain jurisdiction to interpret the terms of their property settlement agreements and to enforce them." *Id.* at 167–68. *See also Bitner v. Hull,* 695 N.E.2d 181, 183 (Ind.Ct. App.1998) (quoting *Wilson v. Wilson,* 169 Ind.App. 530, 533, 349 N.E.2d 277, 279 (1976)) (" '[C]ourts of this State have long had power, both inherent and statutory, to entertain actions to determine whether a judgment has been carried out and satisfied.' ").

The precise issue presented in this appeal is whether the trial court improperly modified the parties' settlement agreement over Wife's objection or whether the court's amendment of the QDRO is necessary to enforce the terms of the parties' settlement agreement and dissolution decree. Wife argues that the trial court had no jurisdiction to amend the QDRO according to its own terms,[3] and the court's order improperly modified the parties' settlement agreement. Husband contends that "[t]he trial court properly exercised its legal and equitable powers to ensure that the QDRO implementation conformed to the terms of the [settlement] [a]greement." Br. of Appellee at 12.

At the hearing held on the petition, Husband stated that the calculation of $1423 as Wife's share of his monthly pension benefit was "the subject of considerable discussion between the lawyers at Eli Lilly and [Husband]." Tr. p. 31. Moreover, Lilly and Husband discussed the "extent to which [his] pension would be reduced." Tr. p. 32. The parties also agreed to draft the QRDO to provide an actuarial equivalent to Wife "with the express condition that under no circumstances shall the Alternate Payee be entitled to receive more than One Thousand Four Hundred Twenty–Three Dollars ($1,423.00) monthly as her share of the Participant's monthly retirement benefit[.]" Tr. p. 38; Appellant's App. p. 43. In these discussions and negotiations, Lilly told Husband that, under the terms of the QDRO, his monthly pension benefit would not be reduced by more than $1423 per month. Tr. pp. 41–42, 76.

However, in 2001, Lilly ceased administering its own pensions and hired Hewitt, an outside consulting firm, to handle the processing and administration of QDROs. Husband asserts that Lilly, through Hewitt, "changed the way they interpreted the QDRO in issue and [is] taking $1686.00 from [Husband's] monthly pension benefit in order to provide [Wife] a monthly income amounting to $1423.00 in cash." Br. of Appellee at 4.

The parties' settlement agreement and QDRO do not contain any provisions addressing a maximum reduction in Husband's monthly pension benefit. Rather, the agreement and the QDRO place a limitation on the maximum amount Wife is to receive as her share of Husband's monthly pension benefit. Husband could have, but failed to bargain for terms in the agreement expressly limiting the reduction of

---

**3.** The parties' 1994 QDRO contains the following provision:

> The Court retains jurisdiction to amend this Order, but only for the purpose of establishing or maintaining its qualification as a Qualified Domestic Relations Order under the Code and ERISA; provided, however

that no amendment shall require the Plan to provide any type of form of benefit, or any option, not otherwise provided under the Plan, and further provided that no amendment will invalidate this Order as a Qualified Domestic Relations Order.

Appellant's App. pp. 45–46.

his monthly pension benefit to fund Wife's share.

Importantly, we observe that the facts and circumstances presented in this appeal are distinguishable from those cases in which our court has held that amendment of a QDRO was necessary to enforce the trial court's final judgment. In *Beike v. Beike*, 805 N.E.2d 1265, 1269 (Ind.Ct.App. 2004), for example, our court held that absent express language in the QDRO stating that the parties would not share in the risks and rewards associated with Husband's pension plan, "the trial court did not abuse its discretion by interpreting the dissolution to reflect the decrease in [Husband's] pension plan," where the decline occurred due to Husband's employer's bankruptcy. However, our court also noted that the result may have differed had the trial court's order stated that Wife was to receive a fixed amount rather than a percentage of the pension plan. *Id.* at 1269 n. 2.

In *Case v. Case*, 794 N.E.2d 514, 518 (Ind.Ct.App.2003), the value of Husband's 401(k) plan decreased significantly, and therefore, the trial court appropriately amended the dissolution decree and resulting QDRO because the original decree contemplated that both parties would share in the risks and rewards associated with the 401(k) plan. We held, "the trial court did not modify the original decree as much as the court clarified the decree to reflect its original meaning." Id. at 519. Similarly, in *Niccum*, 734 N.E.2d at 640, the trial court properly amended the QDRO to provide to Wife "an uncompromised equal share of the investment plan.... [A]bsent express language stating otherwise, the settlement agreement of the parties implicitly contemplated both parties sharing all of the rewards and risks associated with an investment plan."

The cases Husband relies on in support of his arguments involve circumstances that are markedly different from those in the case before us. In those cases, the inconsistency between the court's final judgment and the QDRO was not the result of an additional agreement between the parties.

For example, in *Weller v. Weller*, 115 Ohio App.3d 173, 684 N.E.2d 1284 (1996), the parties agreed "to divide equally" the payments from Husband's pension plan. The QDRO provided that the alternate payee would receive fifty percent of the "basic vested monthly pension benefit accrued by the participant," yet Wife was also receiving fifty percent of Husband's temporary pension. *Id.* at 1286. Neither the parties' agreement nor the QDRO specifically addressed whether Wife was to receive any portion of Husband's temporary pension benefit. The trial court granted Husband's motion to amend the QDRO to allow Wife fifty percent of his basic vested pension benefit only. *Id.* at 1287. The Ohio Court of Appeals affirmed and held that the trial court had jurisdiction to clarify the meaning of the QDRO and the separation agreement. *Id.* at 1288.

In *Self v. Self*, 907 So.2d 546, 547–48 (Fla.Ct.App.2005), the trial court properly amended a QDRO where it contained language that conditioned payment of Wife's share of Husband's pension on contingencies that rendered the award more in the nature of alimony than equitable distribution, which language was inconsistent with the parties' settlement agreement and final judgment. Finally, in *In re Marriage of Allen*, 343 Ill.App.3d 410, 278 Ill.Dec. 288, 798 N.E.2d 135, 137–38 (2003), an amended QDRO was necessary to enforce the court's original judgment where the trial court's judgment of dissolution provided a formula to divide Husband's pension that

utilized 216 months, the number of months the parties were married, as the denominator of a fraction, but the same number of months was not used in the formula in the QDRO.

Husband argues that the QDRO and Settlement Agreement are inconsistent because the QDRO gives Wife an actuarial interest in Husband's pension benefit whereas the Settlement Agreement does not.[4] Therefore, Husband asserts that the trial court's amendment of the QDRO was appropriate to enforce the terms of the parties' settlement agreement. However, Husband concedes that the parties agreed to draft the QRDO to provide an actuarial equivalent to Wife. Br. of Appellee at 3. Moreover, Husband asserts that it is Hewitt's revised interpretation of the QDRO "that does not comport with the Agreement[.]" *Id.* at 21–22. ("By granting [Wife] a monthly cash income amounting to $1,423.00 on the basis of a $1686.00 reduction in [Husband's] monthly benefit, this revised interpretation and construction of the QDRO by Hewitt is violative of the QDRO's own terms[.]").

In light of the fact that Husband agreed to provide an actuarial equivalent to Wife, we cannot agree with his argument that the QDRO should be amended due to the lack of an equivalent provision in the settlement agreement. Furthermore, if as Husband asserts, it is Hewitt's, and therefore Lilly's interpretation of the QDRO that is causing the $1686 reduction in his monthly benefit, it may be more appropriate for Husband to pursue a remedy against Hewitt and/or Lilly.

The parties agreed that Wife would be entitled to receive a maximum amount of $1423 as her share of Husband's monthly benefit. However, they did not agree that Husband's monthly benefit could only be reduced by that amount to fund Wife's share. Accordingly, we conclude that the trial court's order directing Husband to tender an amended QDRO providing that "[Husband's] monthly pension benefit shall not be reduced by more than $1423 and that Wife shall receive the resulting benefit there from" was an improper modification of the parties' settlement agreement and the court's final dissolution decree.

Reversed and remanded for proceedings consistent with this opinion.

FRIEDLANDER, J., and BARNES, J., concur.

---

4. Husband asserts that his monthly benefit is being reduced by $1686 per month to fund Wife's share of $1423 because the QDRO grants to Wife a separate actuarial interest in Husband's pension benefit. However, there is no evidence to support this claim aside from Husband's own statements at the hearing.