**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240439-U

Order filed May 12, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| YETTA SENNEBOGEN, | ) | Du Page County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-24-0439 |
| | ) | Circuit No. 21-D-2321 |
| and | ) | |
| | ) | |
| ANDREW SENNEBOGEN, | ) | The Honorable |
| | ) | James F. McCluskey, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Presiding Justice Brennan and Justice Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The trial court had jurisdiction to enforce the terms of the marital settlement agreement entered into by the parties and incorporated into the judgment for dissolution. The trial court's order, compelling the payment of certain amounts identified by the clear and unambiguous terms of the agreement, is affirmed.

¶ 2     Andrew and Yetta Sennebogen divorced by a judgment of dissolution that incorporated a Marital Settlement Agreement (MSA). The MSA contained provisions stating that Yetta "shall receive" a tax refund, and that she "is awarded" a cost of living reimbursement. Yetta sought to

compel Andrew to make payments under these provisions of the MSA, and the circuit court ordered Andrew to make the payments. Andrew appealed the order, arguing that the circuit court misinterpreted the MSA, inappropriately modified the agreement, and lacked jurisdiction to modify the MSA. We hold that the circuit court had jurisdiction to enforce the MSA, affirm its order compelling payment, and remand the cause for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        Andrew and Yetta Sennebogen were married for about two and half years when Yetta filed a petition for dissolution of marriage in the circuit court of Du Page County on December 23, 2021. Yetta petitioned for support, and an agreed order was entered providing for various payments to her from Andrew and for Andrew's possession of a marital residence. The parties proceeded with discovery and settlement discussions, and the trial was set for August 24, 2023. While Yetta and Andrew continued their settlement discussions, a draft Marital Settlement Agreement (MSA) was drafted and circulated by Yetta.

¶ 5        Yetta tendered a final version of the MSA to Andrew, and he initialed each page and signed the MSA on August 4, 2023. After receiving the executed MSA, Yetta also initialed and signed it. A fully executed MSA was delivered to Andrew on August 7. Sometime after executing the MSA, Andrew expressed his desire to rescind his agreement.

¶ 6        Yetta filed a motion to enforce the MSA and an emergency petition seeking temporary support. On August 17, the circuit court entered an order on the emergency petition that required Andrew to pay Yetta $12,500 for half of a 2021 tax refund. Andrew paid the $12,500 to Yetta as required by that order.

¶ 7        After briefing and a hearing, the circuit court granted Yetta's motion to enforce the MSA on September 22. The order credited Andrew with the initial $12,500 payment ordered on August

17 and required him to also pay the other half of the 2021 tax refund, $12,500, to Yetta within thirty days of entry of the judgment for dissolution.

¶ 8    The prove-up hearing was held on October 31, and the judgment for dissolution of marriage (Judgment) was entered on that date. The Judgment attached the fully executed MSA and stated, "[t]hat YETTA and ANDREW have entered into a written Marital Settlement Agreement" and that "said MSA has been received into evidence and has been approved by the parties as being a reasonable, equitable and a satisfactory resolution of the matters contained therein." The Judgment further stated,

> "That the Marital Settlement Agreement hereinabove contained is hereby in all respects approved, confirmed, ratified and adopted as the Judgment of this Court to the same extent and with the same force and effect as if the provisions contained in said Agreements were set forth in this paragraph of this Judgment and each and every provision thereof is binding upon each of the parties hereto and each of the said parties shall do and perform all of the acts undertaken and carry out all of the provisions contained in the aforesaid Agreements which are made part of this Judgment."

The Judgment also specifically recited the circuit court's reservation of jurisdiction for the purpose of enforcing its terms.

¶ 9    The MSA was attached and made a part of the Judgment as an exhibit. In paragraph 2.1, the MSA recited,

> "It is agreed that this Marital Settlement Agreement shall be effective immediately upon the entry of the Judgment for Dissolution of Marriage as the document shall be incorporated in said Judgment for Dissolution of Marriage when one is entered between

3

the parties. This will then be attached thereto and be merged therein and shall be binding and conclusive upon the parties hereto."

¶ 10    Paragraph 6.4 of the MSA stated, in relevant part:

"As there are no joint assets, each party shall retain the assets in their respective names and the equitable division of property and liabilities is accomplished by the following: To offset that difference in value among all of the assets and liabilities each party is retaining as outlined herein, YETTA shall receive 100% of the 2021 tax refund in amount of $25,000.00. Further, YETTA shall retain the $50,000 pre-distribution received in this matter. There shall not be a reimbursement to ANDREW for the tax benefit YETTA is receiving from said $50,000 of post-tax monies versus ANDREW retaining a comparable portion of 401k monies that are pre-tax."

¶ 11    Paragraph 6.5 of the MSA stated, "As part of a global settlement in this matter, ANDREW shall tender to YETTA the amount of Six Thousand Dollars ($6,000). Said payment shall be made within 30 days after the Judgment of Dissolution or Marriage is entered." Andrew timely paid the $6,000 required by the MSA. Paragraph 7.4 of the MSA awarded Yetta an additional sum, stating, "Yetta is awarded reimbursement for costs of living outside of marital home in spring 2021 which amounts to $2,000."

¶ 12    On February 13, 2024, Yetta filed an amended motion to compel compliance and a petition for a rule to show cause. Yetta's amended motion stated that, under the Judgment, she was to receive 100% of the 2021 tax refund and that Andrew had tendered $12,500 of the refund to her but had not yet paid the balance of $12,500. It also asserted that Yetta had also not received the $2,000 reimbursing her for her spring 2021 living costs from Andrew. She also sought attorney's fees and costs and a finding of contempt.

4

¶ 13    The amended motion to compel was briefed and argued on June 6. An order was entered on that date granting Yetta's amended motion to compel and ordering Andrew to tender a cashier's check for $14,500 to her within 30 days of the entry of the Order. Andrew filed his notice of appeal from that Order on July 3, 2024.

¶ 14                                II. ANALYSIS

¶ 15    As the appellant, Andrew seeks reversal of the June 6, 2024, post-dissolution order (Order) directing him to pay $14,500 to Yetta under the terms of the Judgment and the incorporated MSA. Andrew argues that the circuit court incorrectly interpreted the language of the MSA and that the court lacked jurisdiction to enter the Order because it improperly modified the MSA.

¶ 16    Initially, the time for appeal of the Judgment has long passed because the Judgment and incorporated MSA were entered on October 31, 2023. Andrew acknowledges, as he must, that the "propriety and enforceability" of the Judgment is not at issue, and he further admits that the MSA was properly incorporated into the Judgment and "is enforceable on its actual terms as the final judgment of the court." Nonetheless, Andrew's attack on the post-dissolution Order seeks review of the MSA's terms.

¶ 17    This court has jurisdiction to hear this appeal as a final order under Illinois Supreme Court Rule 301 as it resolves the only open issues remaining in the underlying case. Even if other issues may be raised post-decree, this court has jurisdiction because the Order included a finding that the Order is appealable under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). See *In re Marriage of Crecos*, 2021 IL 126192, ¶ 44.

¶ 18                          A. Jurisdiction of the Circuit Court

¶ 19    Andrew asserts that the circuit court did not have subject matter jurisdiction to enter the Order because it improperly interpreted, and thus modified, the MSA incorporated into the

5

Judgment. Whether the circuit court acted within its jurisdiction is a question of law that we review *de novo. McCormick v. Robertson,* 2015 IL 118230, ¶ 1; *In re Marriage of Allen,* 343 Ill. App. 3d 410, 412 (2003). The resolution of that issue depends on a review of the MSA, and the interpretation of a marital settlement agreement is also reviewed *de novo* as a question of law. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009).

¶ 20      The issue here is whether the Order was merely enforcing the Judgment or whether it modified the Judgment. The test used to determine if the relief sought by the Order is a modification of the Judgment is whether Yetta sought to "engraft" new obligations onto the obligations Andrew already had under the Judgment. *Waggoner v. Waggoner*, 78 Ill. 2d 50, 53-54 (1979).

¶ 21      If the circuit court was merely enforcing a judgment, there was jurisdiction. Generally, the circuit court does not lose its jurisdiction until more than 30 days have passed after the entry of a final appealable judgment. For the purpose of enforcing its decrees, however, a circuit court retains jurisdiction indefinitely. In fact, "a trial court has indefinite jurisdiction to enforce the terms of a [marital] judgment that included a MSA." *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 42. That jurisdiction extends to a contempt proceeding seeking to enforce the provisions of the judgment of dissolution.

¶ 22      However, if the circuit court did more than merely enforce an existing judgment, jurisdiction would likely not exist. Indeed, the circuit court does not have jurisdiction to enter an order revoking or changing a property disposition contained in a final and appealable judgment more than 30 days after its entry. Under section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act), "[t]he provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment

6

under the laws of this State." 750 ILCS 5/510(b) (West 2018). "The provisions for disposition of property in a dissolution judgment are thus a vested right and the trial court lacks jurisdiction to modify such provisions once judgment has become final." *In re Marriage of Davis*, 292 Ill. App. 3d 802, 807 (1997). Further, a circuit court does not have jurisdiction to introduce new obligations into a dissolution judgment or to make other equitable modifications. *In re Marriage of Hubbard*, 215 Ill. App. 3d 113, 117 (1991).

¶ 23    We must, therefore, examine Andrew's obligations under the MSA that was incorporated into the Judgment to determine whether the Order improperly imposed new obligations on him.

¶ 24                              B. The Marital Settlement Agreement Terms

¶ 25                              1. Plain Meaning of the MSA Terms

¶ 26    A marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of that agreement. *Blum*, 235 Ill. 2d at 33. "If the contract language is unambiguous, it should be given its plain and ordinary meaning." *Virginia Surety Co., Inc. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). As Andrew correctly recites, "In the absence of ambiguity, a court must treat the language in a contract as a matter of law and construe the contract according to its language, not according to constructions which the parties place on this language." *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.*, 194 Ill. App. 3d 744, 748 (1990).

¶ 27    The Order granted Yetta's amended motion to compel and ordered Andrew to pay $14,500. The amended motion, the hearing argument, and the parties' briefing all identify the $14,500 to include $12,500 that was to be paid under paragraph 6.4 of the MSA. The remaining $2,000 was to be paid pursuant to paragraph 7.4 of the MSA. The language of paragraphs 6.4 and 7.4 has not

7

changed in any way from the MSA that Andrew executed on August 4, 2023, and was properly incorporated into the Judgment on October 31, 2023.

¶ 28    Paragraph 6.4 of the MSA states, in relevant part, "To offset that difference in value among all of the assets and liabilities each party is retaining as outlined herein, YETTA shall receive 100% of the 2021 tax refund in amount of $25,000.00." The plain and ordinary meaning of the words used in paragraph 6.4 establishes that Yetta was to receive the $25,000 tax refund amount. Andrew delivered $12,500 of the 2021 tax refund to Yetta under the August 17 agreed order but has not delivered the remaining $12,500 to date.

¶ 29    Paragraph 7.4 of the MSA states in its entirety, "Yetta is awarded reimbursement for costs of living outside of marital home in spring 2021 which amounts to $2,000." The plain and ordinary meaning of this language is that Yetta is to be reimbursed $2,000 for her living costs.

¶ 30    2. Arguments Against the Plain Meaning of the MSA Terms Are Not Valid

¶ 31    Andrew makes three arguments to counter the plain language of paragraphs 6.4 and 7.4, requiring that Yetta receive the total of $14,500: (1) paragraphs 6.4 and 7.4 do not expressly order any payment of money to Yetta; (2) because paragraph 6.5 requires a separate payment, no payments should be made under paragraphs 6.4 and 7.4; and (3) the Order's payment directive enforced pre-decree orders that were no longer in effect after entry of the Judgment. We address each of these arguments separately.

¶ 32    Paragraph 6.4 of the MSA states that Yetta "shall receive" the $25,000 tax refund, while paragraph 7.4 states that she "is awarded" $2,000 as a reimbursement. Andrew argues that, because the paragraphs do not explicitly state that he must pay these amounts to Yetta, he is excused from delivering those monies to her. Andrew does not argue that the paragraphs are ambiguous about requiring delivery of the funds but, instead, contends that they are mere statements on the

8

allocation of assets. This argument is completely unsupported by the plain language used. Indeed, Andrew concedes that Yetta has not received either the remaining $12,500 of the tax refund or the $2,000 living cost reimbursement despite the "shall receive" and "is awarded" language in the MSA. The plain and ordinary meaning of those words demonstrates the parties' express intent that Yetta is to receive ownership of those sums. Further, the Judgment ordered Andrew to perform all acts and to deliver all goods and instruments necessary to carry out the purpose of the MSA. Andrew cannot acknowledge that Yetta "shall receive" the tax refund and "is awarded" the cost-of-living reimbursement but claim he does not have to deliver the payments necessary to fulfill those terms.

¶ 33    Nonetheless, Andrew argues that paragraph 6.5 of the MSA supports his argument. That paragraph states, in relevant part, "As part of a global settlement in this matter, ANDREW shall tender to YETTA the amount of Six Thousand Dollars ($6,000)." Andrew argues that because paragraph 6.5 uses the words "shall tender," but paragraphs 6.4 and 7.4 do not, no payments are required under the latter provisions. Andrew also contends that the payment required under paragraph 6.5 would be rendered superfluous if payments under paragraphs 6.4 and 7.4 were also required. We reject both arguments. The use of the words "shall tender" in paragraph 6.5 does not in any way negate or inform the plain and ordinary meaning of the phrases "shall receive" and "is awarded" in paragraphs 6.4 and 7.4. That language unambiguously grants ownership of those funds to Yetta. The use of different language in a different paragraph that each award Yetta additional funds does not undermine the parties' clear intent that all the funds awarded are to be her sole property.

¶ 34    Andrew's assertion that requiring payments under paragraphs 6.4 and 7.4 would render the payment required by paragraph 6.5 superfluous is also unsupported by the MSA's plain language.

9

In paragraph 6.5, the parties agreed that Andrew would make an additional $6,000 payment to Yetta. Paragraph 6.5 merely recites that the additional payment is "part of a global settlement," not that it is the only monetary transfer required by the MSA. No language in paragraph 6.5 specifically refers to, or negates, any other assets awarded in the MSA. Moreover, if paragraph 6.5 is interpreted as mandating the only required payment, it would effectively render paragraphs 6.4 and 7.4 both meaningless, contrary to our standard rules of contract interpretation. *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011).

¶ 35    Andrew also argues that the Order was improperly entered because it enforced pre-decree orders that were not included in the Judgment. This argument is borderline frivolous and is, at best, utterly unsupported. The MSA was executed on August 4, 2023, and Yetta sought its enforcement before a final judgment was entered. That prompted the August 23 order that mandated an initial partial payment of $12,500 from the 2021 tax refund to Yetta. After briefing and argument, the trial court's September 23 order affirmed the validity of the MSA and ordered payment of the remaining balance of the 2021 refund to Yetta, noting that paragraph 6.4 provided that she "shall receive" 100% of that refund.

¶ 36    The October 31 Judgment specifically incorporated all the terms of the MSA, including paragraphs 6.4 and 7.4. Although Andrew knew when the Judgment was entered that the circuit court found that the MSA unambiguously required payment under paragraph 6.4, he failed to appeal that Judgment. Because Andrew refused to make the required payments, Yetta filed her amended motion to compel compliance and obtain a rule to show cause. Her amended motion sought to compel Andrew's compliance with only the Judgment and the incorporated MSA, not with the circuit court's earlier orders. The hearing on the amended motion clearly revealed that the trial court relied on the MSA's incorporation into the Judgment in entering the Order and that

10

the court recognized that the MSA could only be enforced, not modified. Andrew's claim that the circuit court's decision "specifically relied on the September 22, 2023 order" is plainly incorrect.

¶ 37 According to the plain language of paragraphs 6.4 and 7.4 of the MSA, as incorporated in the Judgment, Andrew is required to make the necessary payments to Yetta. The Order did nothing more than enforce the unambiguous terms of the Judgment, consistent with the meaning of the plain language used, and did not modify it. Thus, the circuit court correctly recognized that a deal is a deal, and appropriately exercised its continuing jurisdiction to enforce the Judgment. We, therefore, affirm the circuit court's Order.

¶ 38                                III. CONCLUSION

¶ 39 For the reasons stated, the order of the circuit court of Du Page County is affirmed, and the case is remanded for further proceedings on the enforcement of the judgment.

¶ 40 Affirmed and remanded.

11