*In re* MARRIAGE OF ELENA SANFRATELLO, Petitioner-Appellee, and MICHAEL SANFRATELLO, Respondent-Appellant (Joseph Sanfratello *et al.*, Third-Party Respondents-Appellants).

First District (1st Division)    Nos. 1—07—1438, 1—07—1473 cons.

Opinion filed July 27, 2009.

Alan R. Bruggeman, of Bruggeman, Hurst & Associates, P.C., of Mokena, for appellant Michael Sanfratello.

Paul Feinstein, of Paul L. Feinstein, Ltd., of Chicago, for appellants Joseph Sanfratello and Sharon Sanfratello.

Paul S. Braun, Lauren A. Dropkin, and Thomas C. Edwards, all of Braun & Edwards, Chtrd., of Flossmoor, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

This consolidated appeal and cross-appeal concerns marital dissolution proceedings and a foreclosure action on the marital home. Michael Sanfratello appeals contending Judge Brewer erred in setting his child support obligations, finding he dissipated marital assets, classifying certain assets as marital property, and apportioning those assets. Elena Sanfratello cross-appeals, contending all of Michael's interests in his family's pizza businesses constitute marital assets. She also "cross-appeals" from Judge Boyd's order confirming the sheriff's sale of the marital home in the foreclosure action. Michael's parents, Joseph and Sharon Sanfratello, as putative third-party defendants, appeal from Judge Brewer's judgment holding them jointly and severally liable to Elena for $320,000, the value of the marital home.

We find merit in Joseph and Sharon's claim that the statutory proceedings were not followed in converting third-party respondents

in discovery to third-party defendants. Thus, we vacate the judgment entered against them. Regarding Michael's appeal, we remand for clarification on whether the dissipation award wrongly included the amount Michael paid in support. We dismiss Elena's "cross-appeal" in the foreclosure action because the appeal was untimely. We do not consider Elena's cross-appeal in the dissolution action because her notice of appeal did not raise the issue she raises in her brief. We affirm the judgments below in all other respects.

## BACKGROUND

Michael and Elena Sanfratello were married in 1989 and had three children. Elena, who had been a homemaker for the majority of the marriage, filed a petition for dissolution in July 2003, citing irreconcilable differences. Highly contentious proceedings followed.

One area of contention involved Michael's employment with, and ownership interests in, three family businesses: Sanfratello Pizza, Inc. (Pizza, Inc.); Sanfratello Pizza Factory, Inc. (Pizza Factory); and Sanfratello Pizza Cart, L.L.C. (Pizza Cart). Joseph founded Pizza, Inc., in 1961. Joseph founded the other two restaurants during the parties' marriage.

The other area of contention involved the parties' home. The home was a single-family home in Chicago Heights. Joseph and Sharon purchased the lot and paid for the construction of the home prior to the parties' marriage. Because Michael and Elena took out several home equity loans, they paid a monthly mortgage to Heritage Bank. Joseph had been a director of Heritage Bank, but was not at the time the mortgage was taken or during the dissolution and foreclosure proceedings. Joseph also had a $100,000 lien upon the property.

While the dissolution action was pending, the trial court ordered Michael to pay the home's mortgage. Michael did not pay, and Heritage Bank brought a foreclosure action.

In the foreclosure action, Judge Boyd ordered the sale of the marital home, which Joseph and Sharon purchased at the sheriff's sale. They then filed an eviction action against Elena and the children. Elena unsuccessfully sought to vacate the sheriff's sale on the basis that Joseph, Sharon, and their attorney (the same attorney who represented Michael in the dissolution proceedings) allegedly engaged in fraud. Judge Boyd entered an order approving the sheriff's report of the sale and an order of possession on April 4, 2006.

The dissolution trial began in September 2006. The record reflects proceedings in which Judge Brewer found Michael and his witnesses testified untruthfully and in collusion with each other in an effort to deprive Elena of her share of the marital estate. Judge Brewer made

findings that Joseph, Sharon, and others testified incredibly regarding Michael's income, his interests in the family restaurants, and the restaurants' profits.

On April 27, 2007, Judge Brewer entered a judgment dissolving the parties' marriage. The judgment granted custody of the parties' children to Elena. Judge Brewer ordered Michael to pay $3,446 in monthly child support. She based this amount on an annual net income of $130,000, which she imputed to Michael when he failed to present credible evidence regarding his income. Michael was also ordered to pay the children's full parochial school tuition.

Judge Brewer rejected Michael's contention that he had no interests in the family restaurants. She classified his interests in Pizza, Inc., as nonmarital property and his interests in Pizza Factory and Pizza Cart as marital property. Because Elena's expert was unable to give an opinion as to the value of the businesses in the absence of certain financial documents not provided by Michael and Joseph, Judge Brewer could only conclude the businesses were "quite valuable." She awarded those interests to Michael.

Judge Brewer also concluded the parties' home was marital property, valued it at $320,000, and awarded it to Elena. Judge Brewer ordered Joseph and Sharon jointly and severally liable with Michael for the value of the home.

Judge Brewer found that Michael had dissipated numerous marital assets, including his entire salary since the breakdown of the marriage, $16,496 he had withdrawn from the Nationwide Life Insurance Company, and $19,106.82 he had withdrawn from the children's bank accounts. The court found Michael liable to Elena for one-half of the dissipated amount, an award Judge Brewer calculated to be $266,946.90. The court also ordered Michael to pay Elena's attorney fees and other marital debts.

No one is satisfied with the results of the dissolution and foreclosure proceedings, with all parties appealing. Further facts are discussed as necessary.

## ANALYSIS

Michael asserts Judge Brewer erred in her marital dissolution judgment in four ways: (1) setting his child support obligation without determining his net income or issuing findings to explain her deviation from the statutory child support guidelines; (2) classifying certain of his assets as marital property and awarding the value of those assets to Elena; (3) finding Michael dissipated marital assets; and (4) ordering Michael to pay all debts and attorney and expert fees for Elena.

Elena, in her cross-appeal, contends Judge Brewer wrongly classified a portion of Michael's business interests as nonmarital property. She also appeals Judge Boyd's order approving the sheriff's sale of the marital home.

Joseph and Sharon appeal Judge Brewer's judgment finding them jointly liable with Michael for $320,000, the value of the marital home lost to foreclosure.

## Michael's Contentions

Each of the four errors Michael alleges is reviewed under an abuse of discretion standard. See, *e.g.*, *In re Marriage of Charles*, 284 Ill. App. 3d 339, 342, 672 N.E.2d 57 (1996) (collecting cases). The abuse of discretion standard "is the most deferential standard of review—next to no review at all." *In re D.T.*, 212 Ill. 2d 347, 356, 818 N.E.2d 1214 (2004). "An abuse of discretion occurs where no reasonable person would agree with the position adopted by the trial court." *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176, 685 N.E.2d 871 (1997). The trial court "cannot be said to have abused its discretion if reasonable persons could differ as to its decision." *In re Adoption of D.*, 317 Ill. App. 3d 155, 160, 739 N.E.2d 109 (2000).

### 1. *Child Support*

Michael contends Judge Brewer erred when she ordered him to pay $3,446 per month in child support, which she based on an imputed annual income of $130,000. He claims Judge Brewer erred in requiring him to pay the children's full parochial school tuition in light of his substantial child support obligation.

Where three children are involved, section 505(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505(a)(1) (West 2006)) sets the minimum amount of support at 32% of the noncustodial parent's statutorily defined "net income." 750 ILCS 5/505(a)(1) (West 2006). Section 505(a)(3) of the Marriage Act defines net income as "the total of all income from all sources," minus certain statutory deductions. 750 ILCS 5/505(a)(3) (West 2006). Where the net income cannot be determined, "the court shall order support in an amount considered reasonable in the particular case." 750 ILCS 5/505(a)(5) (West 2006); *In re Marriage of Severino*, 298 Ill. App. 3d 224, 230, 698 N.E.2d 193 (1998).

In this case, it is an understatement to say the evidence conflicted as to Michael's annual income from the various pizza restaurants. Michael testified he received a paycheck of $2,200 every two weeks for the past 20 years, an amount duly reflected in his income tax returns. However, Michael admitted at trial that he lied about his income to the Internal Revenue Service, as evidenced by his bank statements

showing he had made large cash deposits, including $52,605 in 2001, and $72,894 in 2002, cash which was in addition to his paychecks. Also, Elena testified that numerous family expenses, including expensive dinners, designer clothing, and groceries, were all paid in cash. Michael and Joseph attempted to convince the court that the cash amounts were stolen by Michael from the pizza restaurants to pay in part for illegal drugs; Judge Brewer rejected as incredible Michael's and Joseph's explanation for the large amount of cash available to Michael. Instead, Judge Brewer concluded Michael's income was "substantially higher than $2,200 every two weeks," concluding that Joseph paid Michael by check and in cash. Referencing Michael's "vague and evasive statements" and his "alleged failure to recall" certain facts, Judge Brewer determined that she was unable to confirm Michael's net income to apply the statutory support guidelines. In the absence of credible evidence from Michael regarding his net income, Judge Brewer imputed a $130,000 annual net income to Michael, based on the uncontested evidence that Michael had a steady flow of cash available to him. Michael now contends the support award is not reasonable under the circumstances because the $130,000 figure was "random, or a mystery." We disagree with Michael's characterization of Judge Brewer's calculations.

■ Once Judge Brewer concluded she could not determine Michael's annual income, she was required to "order support in an amount considered reasonable in the particular case." 750 ILCS 5/505(a)(5) (West 2006). Judge Brewer acted reasonably in drawing the inference that Michael earned substantially more than his declared income. It was based on this inference that Judge Brewer set support in an amount she determined was reasonable for the benefit of the children. Michael, having been less than candid as to what he truly earned in his business ventures before Judge Brewer, is in no position to claim before us that Judge Brewer went outside her discretion in arriving at a child support obligation based on the clear and convincing evidence that Michael enjoyed a standard of living during the marriage that far exceeded his reported income. We find no fault in the support obligation Judge Brewer set.

■ Michael also argues that the order requiring that he pay 100% of the children's parochial school tuition, in light of the substantial child support award, constituted a deviation from the guidelines without the requisite factual findings. See 750 ILCS 5/505(a)(2) (West 2006) (trial courts may deviate from the guidelines set forth in section 505(a)(1) after considering relevant factors, and requiring the court to "include the reason or reasons for the variance from the guidelines"); see also *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 108, 735 N.E.2d

1037 (2000) ("The court must make express findings if it deviates from the guidelines"). We reject this contention as well.

The child support award here was based not on a deviation pursuant to section 505(a)(2), but on an amount found to be reasonable where Michael's net income could not be determined in accordance with section 505(a)(5). We note that Michael does not point to any evidence in the record that credibly explains his living standard, which might otherwise have led Judge Brewer to make different calculations. See *In re Marriage of Severino*, 298 Ill. App. 3d at 231 ("In cases where the trial court is unable to determine the net income of the party, it is illogical to assert that the trial court must make express findings for varying the child support award from a percentage recommended by the statute"). Under the particularities of this case, Judge Brewer determined the child support and Michael's obligation to pay the parochial school tuition based on the substantial evidence that Michael had a true income far in excess of the income he claimed. We reject the bases Michael offers to overturn Judge Brewer's findings.

## 2. *Division of the Marital Estate*

Michael challenges Judge Brewer's division of property on four grounds: (1) Judge Brewer erred in classifying his interest in Pizza Factory and Pizza Cart as marital property; (2) Judge Brewer improperly based her division of the marital estate on the pizza businesses being "quite valuable"; (3) Judge Brewer improperly classified the home as marital property; and (4) Judge Brewer inequitably awarded "all of the marital estate to Elena."

Some courts apply the manifest weight of the evidence standard upon review of property distribution awards. See, *e.g.*, *In re Marriage of Didier*, 318 Ill. App. 3d 253, 258, 742 N.E.2d 808 (2000). As we noted above, we apply an abuse of discretion standard to the distribution of property award. *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215 (1995) ("A trial court's distribution of marital property should not be reversed absent a showing that the trial court abused its discretion"). Under either standard, the same result obtains.

### a. Michael's Interests in the Family Restaurants

At trial, Michael attempted to establish that he no longer had any interests in the family's three restaurants. Michael claimed his interest in Pizza, Inc., which he acquired from his father prior to the marriage, was transferred to his mother after the commencement of the dissolution proceedings. Michael denies ever knowing that he had an interest in Pizza Cart. In any event, he contends any interest he had in Pizza Factory and Pizza Cart, acquired during the marriage, he lost when his drug use came to light in 2004.

Judge Brewer rejected each of Michael's contentions, finding his testimony incredible and characterizing his alleged transfers as "sham transactions," which were intended to "defraud" Elena from her share of the marital estate. We find no basis to overturn Judge Brewer's rejection of Michael's testimony that he lost ownership in the family business. Nor are we presented with a credible argument that the aim of Michael's testimony was anything other than to deprive Elena of her share of the marital property.

Even in the face of this outrageous conduct, Judge Brewer objectively assessed each business entity to determine whether each was marital or nonmarital property. Judge Brewer determined Michael's interests in Pizza, Inc., to be nonmarital property; his interests in Pizza Factory and Pizza Cart were deemed marital property. Notably, Judge Brewer concluded that Michael should retain his interests in all three pizza restaurants, with Elena being apportioned only the value of the businesses found to be marital property.

Michael contends on appeal that the trial court erred in classifying his interests in Pizza Factory and Pizza Cart as marital property because those interests were gifts from his parents. He argues that any attempt to "defraud" Elena has no bearing on whether those interests were acquired by gift.

Section 503(a) of the Marriage Act (750 ILCS 5/503(a) (West 2006)) presumes that all property obtained by a spouse subsequent to the marriage is marital property. This presumption may be overcome where a party establishes the property was acquired by gift, legacy or descent. 750 ILCS 5/503(a)(1) (West 2006). Another presumption is that a transfer from a parent to a child is a gift. *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186, 600 N.E.2d 437 (1992). In sorting through these presumptions, "the trial court is free to determine *** whether the asset in question was marital or nonmarital property." *In re Marriage of Hagshenas*, 234 Ill. App. 3d at 187.

We are unpersuaded that the gift presumption should trump the presumption of marital property in Michael's case. The interests in Pizza Factory and Pizza Cart that Michael acquired during the course of the marriage provided Michael with a means of supporting his family. We see no reason to find that the very means of support for Michael's family during the marriage should now be considered outside of the marital estate, a portion of which Elena is entitled to receive to give her any hope of approaching a standard of living she had during the marriage. Nor do we take Judge Brewer's discussion of sham transactions and fraudulent attempts to hide marital assets as driving her decision to classify the interests, gifted to Michael, as marital property. Judge Brewer's comments were certainly relevant to her as-

sessments of the credibility of the witnesses. That Michael and his witnesses, including Joseph and Sharon, testified with the aim of depriving Elena of her share of the marital assets, even though their testimony was at odds with the facts, is almost beyond dispute. Whether as a matter of her discretion or consistent with the manifest weight of the evidence, we find Judge Brewer properly classified Michael's interests in Pizza Factory and Pizza Cart as marital property.

### b. Valuation of the Businesses

■ Michael contends Judge Brewer erred in determining the value of his interests in Pizza Factory and Pizza Cart (marital property), and his interests in Pizza, Inc. (nonmarital property).

Section 503(d) of the Marriage Act requires the trial court to divide marital property in "just proportions." 750 ILCS 5/503(d) (West 2006). Before doing so, the value of the marital and nonmarital assets must be established. *In re Marriage of Grunsten*, 304 Ill. App. 3d 12, 17, 709 N.E.2d 597 (1999).

At trial, Elena presented expert testimony from David Rogers, a certified public accountant and a certified valuation analyst. In her discovery disclosures, Elena confused the names of the three pizza businesses, and, in doing so, failed to disclose that Rogers was to provide a valuation of Pizza Cart. Based on Elena's failure to disclose this proposed expert testimony, the court allowed Rogers to testify only about the value of Pizza, Inc., and Pizza Factory. Further, Rogers's valuation testimony as to Pizza, Inc., and Pizza Factory amounted to only "an indication" of value as distinguished from "an opinion" of value because Michael and Joseph did not disclose critical financial documents.

Rogers's testimony established a large gap between the two businesses' indication of value as reported by the companies, and the indication of value Rogers expected to see by a statistical comparison of businesses showing similar customer volume. Rogers's indication of value reflected a gap between Pizza, Inc.'s gross receipts and the income reported on its federal tax returns, a gap to which Michael also testified. Rogers's valuation testimony also undercut Joseph's testimony that Pizza, Inc., had not made a profit in 12 years and that Pizza Factory and Pizza Cart had never been profitable.

Judge Brewer, as the trier of fact, found Rogers credible and Joseph and Michael incredible as to the value of each business. However, because necessary financial documents were not provided by Michael and Joseph to Rogers to allow him to give an expert opinion on value, based on the evidence before her, Judge Brewer could only determine that the businesses were "quite valuable."

Once again Michael seeks to use the gap in the evidence to his benefit. He contends Judge Brewer's "quite valuable" conclusion is unsupported by any "specific determination of value." The gap, which Michael could very well have filled at trial, cannot now be used as a sword to cut down Judge Brewer's finding. This contention, similar to the one he asserted to challenge the child support award, is no more persuasive to challenge Judge Brewer's valuation finding.

The Marriage Act does not require the court to place a specific value on each item of property. *In re Marriage of Hagshenas*, 234 Ill. App. 3d at 200. The record demonstrates that it was Michael's failure to disclose financial information that prevented not only Rogers, but Judge Brewer, from ascertaining the true value of the businesses. Judge Brewer's factual findings are reasonable given that the party in possession of the hard facts deprived the court of the very facts Michael now contends are absent in the record. In the best of circumstances, a trial court has difficulty in determining the value of closely held private corporations. *In re Marriage of Grunsten*, 304 Ill. App. 3d at 17 (the process for determining the market value of a closely held business is "inherently subjective"). Where a party, his witnesses, and, as Judge Brewer found, the party's own attorney refuse to cooperate in the valuation process, the process approaches the impossible. We will not hear Michael complain of circumstances he created. Judge Brewer acted within her discretion in assessing the value of the businesses.

### c. Marital Home

■ Generally, property acquired before the marriage (750 ILCS 5/503(a)(6) (West 2006)), or property acquired by gift (750 ILCS 5/503(a)(1) (West 2006)), is nonmarital property. See *In re Marriage of Philips*, 200 Ill. App. 3d 395, 400, 558 N.E.2d 154 (1990). However, an asset acquired "in contemplation of marriage" is marital property. *In re Marriage of Olbrecht*, 232 Ill. App. 3d 358, 363, 597 N.E.2d 635 (1992) (citing cases).

Judge Brewer first determined that the home was marital property as a result of a "gift in contemplation of marriage" from Michael's parents. Michael contends, as he emphasized at oral argument, that marital property may only be found based on a gift in contemplation of marriage when such a gift is made by one would-be spouse to the other. See *In re Marriage of Philips*, 200 Ill. App. 3d at 400-01. Michael argues that because the home was purchased and gifted by his parents, the home retains its nonmarital character. While we question whether the rule Michael advocates has such clear application in this case because Joseph and Sharon were free to gift the home, built as the home for the newlyweds, to both Michael and Elena, a claim testified

to by Elena, we need not resolve whether the gift from Michael's parents was meant for Michael only or meant for both Michael and Elena. See *In re Marriage of Malters*, 133 Ill. App. 3d 168, 478 N.E.2d 1068 (1985) (home found to be marital even though it was funded in part by monies provided by the wife's father). As an alternative basis for finding the home to be marital property, Judge Brewer found the circumstances in this case transmuted what might well have been Michael's nonmarital property into marital property. "[E]ven if Joseph and Sharon intended to give the house only to Michael, Michael's actions during the marriage transmuted the house into a marital asset." Thus, even if Elena's testimony that Michael's parents intended to gift the home to both Michael and her is insufficient to establish a gift to both, Judge Brewer's transmutation finding provides an independent basis for classifying the home as marital property.

"[N]onmarital property may be presumptively transmuted to marital property" where "the owner of the nonmarital property intended to make a gift of the property to the marital estate." *In re Marriage of Olson*, 96 Ill. 2d 432, 438-39, 451 N.E.2d 825 (1983). Judge Brewer's finding of transmutation is amply supported by the record evidence that Michael and Elena, initially alone, and then with their children, shared the home as a family until the marriage deteriorated, that marital funds paid for the upkeep of the home, and that loans on the equity in the home were taken out jointly by Michael and Elena. In light of the deference we must give, under an abuse of discretion standard, to Judge Brewer's considered finding that the home was marital property, we find no basis to overturn that finding.

Michael next argues Judge Brewer erred when she found the equity in the marital home to be $320,000. We reject this claim out of hand where this value is consistent with the testimony of Joseph, who acquired the home through foreclosure.

Michael finally contends Judge Brewer erred when she awarded Elena what he calculates to be 100% of the marital estate. Suffice it to say, Michael received both "quite valuable" businesses found to be marital property. Michael's contention is rebutted by the record.

### 3. *Dissipation of Marital Assets*

■ Michael attacks Judge Brewer's finding that he dissipated marital assets as "overbroad" in that the dissipation included what he claims to be legitimate expenses.

In allocating property pursuant to section 503 of the Marriage Act, the trial court must consider any "dissipation by each party." 750 ILCS 5/503(d)(2) (West 2006). "Dissipation has been defined as ' "the use of marital property for the sole benefit of one of the spouses for a

purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown" ' [citation] ***." *In re Marriage of Petrovich*, 154 Ill. App. 3d 881, 886, 507 N.E.2d 207 (1987). The person charged with dissipation bears the burden of establishing by clear and convincing evidence how the funds were spent. *In re Marriage of Petrovich*, 154 Ill. App. 3d at 886.

Here, Judge Brewer found Michael dissipated $533,892 of the marital estate: $498,290 of his income from July 1, 2003, to the time the judgment was entered, $19,106 from the children's bank accounts, and $16,496 from the Nationwide Life Insurance Company.

Michael complains that Elena did not disclose the full extent of her dissipation claim. Michael concedes he received notice on May 4, 2004, that Elena claimed he dissipated the funds in the children's bank accounts; he further concedes he received notice on August 29, 2005, that Elena claimed he dissipated other marital assets on his vacations, girlfriends, and illegal drugs while the mortgage on the marital home went unpaid. Michael's claim of a "requirement" that the notice be provided is overly broad; courts have properly found dissipation *sua sponte*. See, *e.g.*, *In re Marriage of Henke*, 313 Ill. App. 3d 159, 178, 728 N.E.2d 1137 (2000). Notice here was adequate.

Michael complains that Judge Brewer's finding that he dissipated all of his income during the period in question is unjust. He contends the funds he used to pay necessary living expenses and what he provided the family while the dissolution proceedings were pending cannot fall under the dissipation claim. At oral argument, Michael raised the claim that the payments he made for his children's parochial education should also be excluded from the dissipation claim. Under his calculations, he spent $65,340 on his legitimate expenses and $87,500 on court-ordered child support payments. He does not calculate how much he spent on his children's parochial education.

While his complaints are not without some merit, our resolution turns on Michael's failure to carry the burden to defeat the dissipation claim. Michael provided no documentary support of his "legitimate" living expenses, which should have been excluded from the dissipation claim. It was Michael's burden to make this showing by clear and convincing evidence, a burden he did not carry. See, *e.g.*, *In re Marriage of Hahin*, 266 Ill. App. 3d 168, 171, 644 N.E.2d 4 (1994) ("General and vague statements" to account for how marital funds are used "are insufficient to defeat a charge of dissipation"). Nor has Michael pointed to a place in the record where he presented evidence of the amounts he claims to have paid in tuition. The credible trial evidence discloses that it was Joseph and Sharon, rather than Michael, that paid the educational costs.

However, there is clear and convincing evidence that Michael paid child support during the dissolution proceedings, which must be excluded from a dissipation award. *In re Marriage of Hagshenas*, 234 Ill. App. 3d at 197 ("the expenditure of marital funds by one spouse for necessary, appropriate and legitimate expenses at a time when the marriage is undergoing an irreconcilable breakdown will not be considered to be dissipation"). It is unclear whether these support payments were excluded from the amount Judge Brewer found to be dissipation. Michael argues he paid $500 weekly to Elena and the children, for a total of $87,500. Elena does not dispute that Michael paid support in this amount, although, at times, the support he eventually provided was prompted by the filing of a rule to show cause. Based on the record before us, we remand to clarify whether the $87,500 paid in child support was wrongly included in the dissipation amount.

Finally, Michael argues he could not have dissipated the children's bank accounts because the accounts were not part of the marital estate. It is true that an account created pursuant to the Illinois Uniform Transfers to Minors Act (Transfers to Minors Act) (760 ILCS 20/1 *et seq.* (West 2006)) becomes "custodial property [that] is indefeasibly vested" in the minor beneficiary (760 ILCS 20/12(b) (West 2006); *Pope v. First of America, N.A.*, 298 Ill. App. 3d 565, 567, 699 N.E.2d 178 (1998)), and is not considered part of the marital estate (*In re Marriage of Agostinelli*, 250 Ill. App. 3d 492, 620 N.E.2d 1215 (1993)). It was Michael's burden to establish that the accounts fell under the Transfers to Minors Act.[1] Because we find insufficient evidence that the accounts were not part of the marital estate, we reject his contention.

### 4. *Allocation of Debts, Expert and Attorney Fees*

■ Michael claims Judge Brewer required him to shoulder "all of the marital debt," plus Elena's expert and attorney fees. He contends this is unfair.

Michael points to the bankruptcy relief Elena sought in July 2005, to argue that Elena should be estopped from shifting any marital debts that she failed to include in her bankruptcy petition. However, Michael cites no relevant authority to support this proposition; it is

---

[1] During trial, Michael was asked about any "UGMA" (Uniform Gift to Minors Accounts) set up for his children. After Michael gave inherently contradictory testimony, Judge Brewer had Joseph removed from the courtroom because, in the court's words, Joseph was "shaking his head" and "making noises" in response to Michael's testimony in an attempt to influence it.

thus waived. *In re Marriage of De Bates*, 212 Ill. 2d 489, 517, 819 N.E.2d 714 (2004) (a reviewing court may reject a party's contention where the party fails to provide "an adequate basis to grant *** relief" by citing relevant authority).

Michael challenges the trial court's order that he pay $111,135.50 in Elena's attorney fees, pointing to errors in arithmetic, the absence of supporting documentation, and the failure to hold an evidentiary hearing.

The fee petition at issue was filed by Elena after trial pursuant to section 503(j) of the Marriage Act (750 ILCS 5/503(j) (West 2006)). Section 503(j) permits the trial court to grant a petition seeking contribution to cover fees and expenses incurred by the other party, so long as the amount is reasonable. *In re Marriage of Nesbitt*, 377 Ill. App. 3d 649, 657, 879 N.E.2d 445 (2007). Section 503(j) provides:

> "After proofs have closed in the final hearing on all other issues between the parties (or in conjunction with the final hearing, if all parties so stipulate) and before judgment is entered, a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided ***." 750 ILCS 5/503(j) (West 2006).

The provisions of section 503(j), including the right to a contribution hearing, must be asserted by the party against whom the contribution is sought. 750 ILCS 5/508(c)(2)(iii) (West 2006) (a final hearing under section 508(c) of the Marriage Act is not permitted unless, among others, "judgment in any contribution hearing on behalf of the client has been entered or the right to a contribution hearing under subsection (j) of Section 503 has been waived"); *In re Marriage of King*, 208 Ill. 2d 332, 341, 802 N.E.2d 1216 (2003) (citing section 508(c)(2)(iii) and noting the right to a section 503(j) contribution hearing may be waived); see also *In re Marriage of Lindsey-Robinson*, 331 Ill. App. 3d 261, 268-69, 771 N.E.2d 976 (2002) (requirement under section 503(j) that a contribution petition be filed prior to the entry of the dissolution judgment may be waived).

Elena contends Michael failed to request a hearing in response to her contribution petition, thus waiving his right to one. In response, Michael cites Judge Boyd's September 7, 2006, order postponing until trial Elena's then-pending petition for interim attorney fees under section 501(c—1) (750 ILCS 5/501(c—1) (West 2006)) and Michael's then-pending petition to set final attorney fees and costs. Michael's position is that Judge Boyd's order that fees were to be determined at trial made it unnecessary for him to thereafter assert his right to a hearing. Michael's position is untenable.

Upon the conclusion of the trial, Judge Brewer did not address fees, but ordered "the appropriate motions" be filed regarding fees

within 30 days, stating, "we're going to have a hearing on [the] attorney's fees issue or you're going to submit petitions, and I'll look at them and decipher whether a hearing is warranted." In accordance with Judge Brewer's order, on October 16, 2006, Elena filed the section 503(j) contribution petition now at issue. In the face of such a petition, Michael, at no time thereafter, objected to Elena's contribution or demanded a hearing on the issue of fees. On the record before us, the issue of Michael's waiver was before Judge Brewer. It was well within her discretion to find that Michael did not dispute the fees Elena was seeking by failing to file a response.

Because Michael did not request a hearing before Judge Brewer on the very fee petition he now seeks to attack on appeal, he forfeited the opportunity to demonstrate the errors he contends are present in Judge Brewer's calculations of fees and costs actually existed. In other words, he waived this issue.

## Elena's Contentions

In what is designated a "cross-appeal," Elena contends Judge Boyd abused his discretion when he approved the sheriff's sale in the foreclosure action. She alleges that Michael's attorney and Michael's parents engaged in fraudulent actions in the course of the foreclosure action, which she contends are made clear by their action to evict Elena and the children from the home. In her cross-appeal from the dissolution judgment, Elena contends Judge Brewer erred when she failed to award Elena a share of Michael's interest in Pizza Factory or Pizza Cart. In a motion taken with the case, Joseph and Sharon assert two bases to bar our consideration of Elena's contentions.

### 1. *Foreclosure Appeal*

■ Joseph and Sharon argue that Elena's notice of cross-appeal, in which she challenges Judge Boyd's order, is untimely. The notice was filed on June 4, 2007, more than a year after the entry of the order confirming the sheriff's sale on April 4, 2006.

Elena responds that the order of December 5, 2005, staying the order confirming the report of sale until the trial of the dissolution cause, delayed the legal effect of the sheriff's sale. Elena argues that because the December 5, 2005, order addressed both the foreclosure and the dissolution cases, the order did not dispose of all of the rights and liabilities of all of the parties involved. Therefore, without a finding pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), the order of April 4, 2006, confirming the sale of the home was not final and appealable. In her view, the foreclosure order was not appealable until the dissolution order was entered on April 27, 2007. Elena contends that because she filed her notice of cross-appeal within 10

days of Joseph and Sharon's May 25, 2007, notice of appeal, appellate jurisdiction was properly invoked to review her claim as to the foreclosure order. Ill. S. Ct. R. 303(a)(3) (eff. May 30, 2008) (a notice of cross-appeal may be timely filed within 10 days of service of another party's notice of appeal).

We agree with Joseph and Sharon. Where, as here, consolidation of two actions is for purposes of convenience and economy only, the causes do not merge into a single suit; rather, they retain their distinct identities. Elena's position fails to take into account that her challenge to the foreclosure sale was independent of any appeal Joseph and Sharon might pursue in the dissolution action. Elena's challenge in the foreclosure sale was not in the nature of a cross-appeal, a notice dependent on the appeal of another party. Elena was not a successful party in the foreclosure action. If she sought to challenge the foreclosure ruling, she was required to file a notice of appeal in the first instance. Accordingly, Rule 304(a) language was not required to render the foreclosure judgment appealable; thus, Elena's appeal in the foreclosure action was untimely where it was filed more than 30 days after the foreclosure order was entered. *Nationwide Mutual Insurance Co. v. Filos*, 285 Ill. App. 3d 528, 532, 673 N.E.2d 1099 (1996).

## 2. *Dissolution Appeal*

■ Joseph and Sharon also argue that we should not consider Elena's challenge to Judge Brewer's decision not to grant Elena, as part of her share of the marital estate, an interest in the businesses Joseph and Sharon operate with Michael, because she failed to raise this issue in her notice of cross-appeal. Again, we agree. "When an appeal is taken from a specified judgment, the appellate court acquires no jurisdiction to review other judgments or parts of judgments not specified or fairly inferred from the notice." *In re J.P.*, 331 Ill. App. 3d 220, 234, 770 N.E.2d 1160 (2002). Here, Elena's notice of cross-appeal requested that we affirm the dissolution judgment; she did not challenge any portion of the judgment.

Accordingly, we dismiss Elena's cross-appeal in which she seeks to challenge the apportionment of the marital estate.

## Joseph and Sharon's Contentions

■ Joseph and Sharon contend that Judge Brewer lacked authority to treat them as substantive third-party respondents in the dissolution action. They assert they were injected into the dissolution action as third-party respondents in discovery pursuant to section 2—402 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—402 (West

2006)). They contend that at no time during the proceedings below were they converted from third-party respondents in discovery to substantive third-party respondents. Because they were never before Judge Brewer as additional parties in interest, Judge Brewer had "no basis" to hold them jointly and severally liable with Michael for the value of the marital home of $320,000.

Section 2—402 of the Code provides in relevant part that a "plaintiff in any civil action may designate as respondents in discovery *** those individuals *** believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action." 735 ILCS 5/2—402 (West 2006). Section 2—402 also permits the plaintiff to request of the court that the respondents in discovery "be added as defendants if the evidence discloses the existence of probable cause for such action." 735 ILCS 5/2—402 (West 2006). Generally stated, the plaintiff has six months to make such a request. 735 ILCS 5/2—402 (West 2006). This court has explained:

"The plain meaning of section 2—402 and its interpretation in the case law establish a simple regime for converting a respondent in discovery into a defendant ***. First, to be timely and have proper form, *Clark*[ *v. Brokaw Hospital*, 126 Ill. App. 3d 779, 467 N.E.2d 652 (1984),] teaches that a plaintiff's motion to amend a complaint to convert respondents in discovery into defendants must be filed within six months after naming a respondent in discovery, and the motion must indicate this purpose on its face or by the attachment of the amended complaint when the motion is filed or presented to the court. Next, as *Browning*[ *v. Jackson Park Hospital*, 163 Ill. App. 3d 543, 516 N.E.2d 797 (1987),] holds, section 2—402 motions cannot properly be filed as routine motions, so a plaintiff must request a probable cause hearing because, as *Torley*[ *v. Foster G. McGaw Hospital*, 116 Ill. App. 3d 19, 452 N.E.2d 7 (2002),] explains, only a court may decide this evidentiary question." *Froehlich v. Sheehan*, 240 Ill. App. 3d 93, 103, 608 N.E.2d 889 (1992).

Because section 2—402 encompasses a statutory right unknown at common law, the statute's requirements must be "scrupulously observe[d]" (*Robinson v. Johnson*, 346 Ill. App. 3d 895, 903, 809 N.E.2d 123 (2004)); the requirements are neither " 'hoop-jumping' " nor "empty formalism" (*Froehlich*, 240 Ill. App. 3d at 103).

In this case, the record demonstrates that Elena filed a motion to add Joseph and other parties, but not Sharon, as third-party respondents on May 10, 2004. That motion did not cite section 2—402. Instead, it cited sections 2—405, 2—406, and 2—407 of the Code, which address joining additional parties. 735 ILCS 5/2—405, 2—406, 2—407 (West 2004). While a hearing was pending on that motion,

Elena filed a motion to add Joseph, Sharon, and Heritage Bank as third-party respondents on June 29, 2004. Like the May 10 motion, the June 29 motion cited sections 2—405, 2—406, and 2—407. In an order entered on July 13, 2004, Judge Boyd granted Elena leave of court to add Joseph, Sharon, and other parties, as "additional [third-] party respondents for purposes of obtaining information relative to business interests/concerns." We take this order to mean that Joseph and Sharon were added as third-party respondents in discovery only. No mention of an evidentiary finding of "probable cause," pursuant to a hearing, was made in the order to support adding Joseph and Sharon as substantive third-party respondents.

Elena does not challenge the procedural history as we have set out above. Instead, she contends that the actions of Joseph and Sharon in effect made a conversion under section 2—402 unnecessary:

> "Joseph and Sharon were not converted from third-party respondents in discovery to substantive third-party defendants, because doing so was unnecessary because Joseph and Elena voluntarily submitted themselves to the jurisdiction of the court and consented to the court's jurisdiction by filing an Appearance and asking affirmatively for relief and filing a substantive motion on their own behalf."

We disagree.[2]

Conversion does not involve the issue of personal jurisdiction, as there is no dispute summons was in fact served. See *Coyne v. OSF Healthcare System*, 332 Ill. App. 3d 717, 719, 773 N.E.2d 732 (2002) ("Once a party has been named a respondent in discovery and service of summons has been properly executed upon him, the court acquires *in personam* jurisdiction over that party for all purposes"). Rather, the issue in this case is whether Elena adhered to the procedural requirements of section 2—402 by timely seeking to convert Joseph and Sharon's status from third-party respondents in discovery to substantive third-party respondents by requesting a probable cause hearing to allow the court to answer the evidentiary question. *Froehlich*, 240 Ill. App. 3d at 103 ("only a court may decide this evidentiary question" of probable cause).

Because Joseph and Sharon were not properly added as substantive third-party respondents, we must agree that the trial court had

---

[2]During oral argument, we invited counsel for Elena to file any additional case law that provides direct support for the judgment against Joseph and Sharon. A "Supplemental Brief with Submission of Case Law" was filed. Joseph and Sharon filed a response. We do not consider the Supplemental Brief properly before us; nor do we find the case law cited in the brief to provide support for Elena's claim before us.

"no basis" to hold Joseph and Sharon jointly and severally liable to Elena for $320,000. See, *e.g.*, *Delestowicz v. Labinsky*, 288 Ill. App. 3d 637, 639, 681 N.E.2d 1008 (1997) ("[A] lawsuit naming an individual as a respondent in discovery is not an action against that individual and the individual is not a party to that action"). Accordingly, we vacate that portion of the dissolution judgment.

## CONCLUSION

Although we are mindful of " 'fanning the undying flame of this litigation' " (*In re Marriage of Adler*, 271 Ill. App. 3d 469, 478, 648 N.E.2d 953 (1995), quoting *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 116, 559 N.E.2d 819 (1990)), we must remand for further proceedings. Because Joseph and Sharon were never converted to substantive third-party respondents in the dissolution action, the judgment of dissolution of marriage must be modified to reflect that the judgment against Joseph and Sharon is vacated. Because it is unclear from Judge Brewer's findings that the $500 per week Michael paid in support to Elena was excluded from the amount he was otherwise found to have dissipated, we remand for clarification. If the $87,500 paid by Michael in support was not excluded from the dissipation, the dissipation amount of $533,892 should be reduced by $87,500, lowering Elena's award to $223,196.90 ($266,946.90 -- $43,750). Of course, if the dissipation award excludes the support Michael paid during the relevant period, then no adjustment is required. Elena's "cross-appeal" in the foreclosure action is dismissed for lack of jurisdiction because her appeal was untimely. We do not consider Elena's cross-appeal in the dissolution action because her notice of cross-appeal does not raise the issue she urges before us.

No. 1—07—1438—Affirmed in part and vacated in part; cause remanded.

No. 1—07—1473—Dismissed.

R.E. GORDON, P.J., and WOLFSON, J., concur.