NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200326-U

NO. 4-20-0326

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 14, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| LISA ROMERO, | ) | Circuit Court of |
|     Petitioner-Appellee, | ) | Champaign County |
|     and | ) | No. 17D567 |
| JOHN B. LEVOLD, | ) | |
|     Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed in part, reversed in part, and remanded for further proceedings, concluding respondent demonstrated the trial court's classification of both the rental income from petitioner's nonmarital property and his Roth individual retirement account were erroneous but his other contentions of error were meritless.

¶ 2    In December 2017, petitioner, Lisa Romero, filed a petition to dissolve her marriage to respondent, John B. Levold. The parties had been married since December 1999. No children were born or adopted during the marriage. The matter proceeded to trial concerning the disposition of property on April 12, April 25, and July 23, 2019. Following the trial and the receipt of written closing arguments, the trial court issued a written opinion and order. Respondent thereafter filed a motion to reconsider, which raised various challenges to the court's findings in its opinion and order. After receiving a response from petitioner, the court entered another written opinion and

order, rejecting all of respondent's challenges. Respondent now appeals.

¶ 3　　　　On appeal, respondent argues the trial court erroneously (1) classified rental income from petitioner's nonmarital property as nonmarital property or, alternatively, declined to accord him a credit for his contributions to that nonmarital property, (2) classified his Roth individual retirement account (IRA) as marital property, (3) classified the entirety of his State Universities Retirement System (SURS) account as marital property, (4) valued the marital residence and vehicles, (5) valued the parties' retirement accounts, and (6) refused to offset petitioner's share of the marital property by the rental income lost from the two marital properties. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

¶ 4　　　　　　　　　　　　　　I. BACKGROUND

¶ 5　　　　The following is gleaned from the record presented as it relates to the issues presented in this appeal.

¶ 6　　　　　　　　　A. Rental Income From Nonmarital Property

¶ 7　　　　Prior to the parties' marriage, petitioner purchased a residential property located at 409 Irvine Road in Champaign, Illinois (409 Irvine). The parties then resided at 409 Irvine after their marriage. They later purchased and moved into a residential property located at 1919 Trout Valley in Champaign (1919 Trout). To purchase 1919 Trout, the parties obtained a loan which was secured by a mortgage against 409 Irvine. In addition, the parties purchased two investment residential properties in Champaign located at 2815 Natalie Drive (2815 Natalie) and 2619 Natalie Drive (2619 Natalie).

¶ 8　　　　After moving into 1919 Trout, the parties, who worked full-time at the University of Illinois, began renting out 409 Irvine and then did so for approximately eight years. They also rented out 2815 Natalie and 2619 Natalie. Both parties showed the properties to prospective tenants

and signed leases. Petitioner handled all the financial matters related to the properties. She established three separate checking accounts for the properties. She deposited the rent payments for the properties into the associated checking accounts and paid related expenses, such as property taxes and condominium fees, from those funds. Respondent, in turn, handled most of the maintenance related to the rental properties. With respect to 409 Irvine, the division of labor was consistent with the other rental properties. The leases for 409 Irvine were signed by both parties and directed the tenants to pay rent to petitioner. Respondent testified he made substantial improvements to 409 Irvine over the years by painting, replacing carpeting, staining a deck door, repairing parquet flooring, and redoing a ceiling in a garage. Petitioner testified she paid more than $40,000 on the loan which was secured by a mortgage against 409 Irvine with rent payments she obtained from 409 Irvine.

¶ 9        Petitioner sought an amount in excess of $40,000 for the payment of marital debt, the loan which was used to purchase 1919 Trout, with her nonmarital property, the rental income from 409 Irvine. Respondent objected, arguing, even though 409 Irvine was petitioner's nonmarital property, any rental income from 409 Irvine was marital property. Accordingly, respondent sought one-half of the rental income from 409 Irvine or, to the extent the trial court found the rental income was nonmarital property, reimbursement for his personal efforts which improved the nonmarital property. In response, petitioner maintained the rental income from 409 Irvine was nonmarital property, asserting it was "not attributable to the personal effort of a spouse." She further argued respondent did not present evidence indicating his personal efforts related to 409 Irvine were significant and resulted in substantial appreciation.

¶ 10        The trial court first considered whether the rental income from 409 Irvine was marital or nonmarital property. The court acknowledged, because the rental income was acquired

- 3 -

during the marriage, it was petitioner's burden to show the rental income was nonmarital property. Turning to the relevant statutory language, the court noted income from a nonmarital asset is nonmarital property only if it is not attributable to the personal efforts of a spouse. The court found the statutory language was vague:

> "What does 'attributable' mean? Is it that the spouse helped create the income? Is it that there is an ongoing effort to produce the income? Most importantly, does there have to be a certain amount of personal effort for the entire income to be marital?"

The court concluded, "Because of the vagueness of the statute, the Court is not inclined to find that [respondent's] personal efforts rose to a specific level to convert the entire rental income over the [eight] years into marital income." The court acknowledged its finding was a "close call." The court next considered whether the parties were entitled to their respective requests for reimbursement related to 409 Irvine. As to petitioner, the court found petitioner was entitled to a $20,000 credit as she had been paying a marital debt with the nonmarital rental income. As to respondent, the court found respondent was not entitled to reimbursement as he had not established his efforts were significant and resulted in substantial appreciation.

¶ 11    Respondent challenged the trial court's finding that the rental income from 409 Irvine was nonmarital property in his motion to reconsider. Respondent argued the evidence showed the rental income was "attributable to the personal efforts of both spouses." The trial court rejected respondent's challenge. In doing so, the court noted, "The analysis turns on whether the rental income was attributable to the personal efforts of [r]espondent."

¶ 12                    B. Respondent's Retirement Accounts

¶ 13    Respondent had a SURS account and a Roth IRA. As to the SURS account,

- 4 -

respondent presented an exhibit which suggested he had 20.5 years of service credit as of December 2018. Respondent testified only about the value of his SURS account. As to the Roth IRA, petitioner presented an exhibit indicating the account had a value of $7,431 at the end of 2017, and respondent presented an exhibit indicating the account had a value of $8,398 at the end of 2019. Respondent testified to his belief that he started a "small IRA, a few thousand dollars, prior to the marriage." Respondent was asked about the last time he contributed to his Roth IRA, to which he testified, "I don't know."

¶ 14 Respondent sought the entirety of his SURS account and Roth IRA. Petitioner did not object to respondent being awarded the Roth IRA but argued she should be accorded part of his SURS account.

¶ 15 The trial court, when addressing respondent's SURS account, acknowledged the possibility a year of service credit could have been acquired prior to the marriage. The court found, in the absence of any testimony concerning the service credit, the entirety of the SURS account was marital property. As to the Roth IRA, the court found, based upon the limited evidence presented, the account was marital property.

¶ 16 Respondent challenged the trial court's finding concerning his Roth IRA in his motion to reconsider. Respondent asserted the evidence established the account was created prior to the marriage and no funds were added during the marriage. As to the court's finding concerning his SURS account, respondent, before suggesting the court's valuation was incorrect, stated, "the Court appropriately identifies [respondent's] SURS [account] as entirely marital in nature." The court rejected respondent's challenge concerning his Roth IRA, finding respondent's testimony indicating he did not know when he last contributed to the account along with the account's increase in value was sufficient to classify the account as marital property. Moreover, the court

noted even if its classification was in error, it would not have likely affected the equitable division of property given the sizeable marital estate.

¶ 17                    C. Valuation of the Marital Residence

¶ 18        In September 2008, the parties purchased 1919 Trout for $363,000. In the years that followed, the parties completed several updates and improvements to the marital residence. Both parties presented testimony from expert witnesses concerning the residence's value. Each expert reached a valuation and explained how they reached that valuation. Respondent's expert valued the residence at $522,000. Petitioner's two experts valued the residence at $405,000 and $412,000. Respondent testified about the residence and his belief its unique qualities made it stand out among other houses in its price range. Respondent provided valuations from two websites indicating the residence had a value of $491,300 and $484,370.

¶ 19        Petitioner argued the trial court should value the marital residence at $412,000. Conversely, respondent argued the court should value the residence at $520,000.

¶ 20        The trial court provided a detailed review of the testimony presented. The court acknowledged respondent's reliance on valuations from websites but declined to give any weight to those valuations as it had no information about the methodology used to reach the valuations. After reviewing the conflicting testimony, the court valued the marital residence at $412,000.

¶ 21        Respondent challenged the trial court's valuation of the marital residence in his motion to reconsider. Respondent argued the court erroneously ignored the evidence he presented. The court rejected respondent's challenge, making clear it considered respondent's evidence, except for the online valuations, in reaching its valuation.

¶ 22                    D. Valuations of the Marital Vehicles

¶ 23        Both parties testified about obtaining valuations of the marital vehicles from the

Kelly Blue Book website. Petitioner offered printouts from the website indicating her marital vehicle had a value between $10,271 and $10,727 and respondent's marital vehicle had a value of $4377. As to her marital vehicle, petitioner testified, even though the printout did not indicate her vehicle had a convertible hardtop, the sports package she selected as an option on the website included a convertible hardtop. As to respondent's marital vehicle, petitioner acknowledged the information she provided to reach the valuation was based upon her best recollection. Respondent offered a printout from the website indicating his marital vehicle had a value of $1786. Respondent testified his estimate included his vehicle's actual features and mileage. Instead of a printout from the website for petitioner's vehicle, respondent offered a prepared "Settlement proposal," which indicated petitioner's marital vehicle had a value of $14,995. Respondent testified the information he provided to reach the valuation for petitioner's vehicle included the fact she had a convertible hardtop.

¶ 24 Petitioner argued the trial court should value the marital vehicles based upon the information she provided. Conversely, respondent argued the court should value the marital vehicles based upon the information he provided.

¶ 25 The trial court found petitioner's evidence more reliable. The court valued petitioner's marital vehicle at $10,727 and respondent's marital vehicle at $4377.

¶ 26 Respondent challenged the trial court's valuations of the marital vehicles in his motion to reconsider. Respondent argued the court should not have relied on the valuations from the Kelly Blue Book website without any information about its methodology and should not have valued petitioner's vehicle so low given her admission her valuation did not include information about the convertible hardtop. The court rejected respondent's challenge, noting petitioner testified about her belief the convertible hardtop was part of the sports package.

¶ 27                    E. Valuations of the Retirement Accounts

¶ 28        Petitioner presented valuations of her retirement accounts as of March 2019. Respondent, in turn, presented valuations of his retirement accounts as of December 2018. On the last day of trial, the trial court permitted the parties to submit a list of agreed-upon valuations. The parties did not provide such a list. Respondent provided updated valuations as of June 2019. Petitioner did not provide updated valuations, and respondent did not seek an order requiring petitioner to provide such valuations.

¶ 29        The trial court valued petitioner's retirement accounts as of March 2019 and respondent's retirement accounts as of June 2019.

¶ 30        Respondent challenged the trial court's valuations of the parties' retirement accounts in his motion to reconsider. Respondent argued the court should have assigned valuations based on information from the same period. The court rejected respondent's challenge, noting the court had to exercise its discretion in determining an appropriate period to value the retirement accounts in the absence of agreed-upon valuations.

¶ 31                    F. Lost Rental Income

¶ 32        Prior to the commencement of the dissolution proceedings, petitioner informed respondent of her desire to sell 2815 Natalie and 2619 Natalie, to which respondent, ultimately, did not object. Petitioner contacted a licensed real estate agent to list the two properties for sale. At the time the properties were listed for sale, they were occupied by tenants. Petitioner later, over respondent's objection, decided not to renew any leases while the properties were listed for sale. Petitioner testified she made that decision based upon the advice of her listing agent and because she wanted to better prepare the properties for sale. The listing agent testified the occupancy by the tenants made showings difficult and it was much easier to have showings after the tenants

vacated the properties. In addition, the listing agent was able to give suggestions, such as stripping wallpaper, which she believed would make the properties sell faster after the tenants vacated the properties. The parties followed the listing agent's suggestions, and the properties later sold.

¶ 33    Respondent argued the trial court should offset petitioner's share of the marital property by the rental income lost from the two marital properties. Petitioner did not respond to respondent's argument.

¶ 34    The trial court found, while both parties had valid reasons to rent or not rent the marital properties while they were listed for sale, neither party's reason was more compelling than the other. The court refused to offset petitioner's share of the marital property.

¶ 35    Respondent challenged the trial court's finding in his motion to reconsider. Respondent asserted petitioner's belief it would be easier to sell the properties without tenants was not a valid reason for not renting out the marital properties. The trial court rejected respondent's challenge, noting petitioner's belief was supported by the testimony from the listing agent.

¶ 36                    II. ANALYSIS

¶ 37    On appeal, respondent argues the trial court erroneously (1) classified rental income from petitioner's nonmarital property as nonmarital property or, alternatively, declined to accord him a credit for his contributions to that nonmarital property, (2) classified his Roth IRA as marital property, (3) classified the entirety of his SURS account as marital property, (4) valued the marital residence and vehicles, (5) valued the parties' retirement accounts, and (6) refused to offset petitioner's share of the marital property by the rental income lost from the two marital properties.

¶ 38    First, respondent complains about the trial court's classification of the rental income from petitioner's nonmarital property, 409 Irvine, as nonmarital property. Specifically, respondent argues the court's finding petitioner had met her burden of proof "is contrary to the

manifest weight of the evidence" given the parties' "similar personal efforts with the rental business and improvements to the house during the same time that it was being rented." In response, petitioner maintains the rental income is nonmarital property, asserting it was not attributable to the personal efforts of respondent.

¶ 39     Respondent's complaint is not a challenge to the evidence presented. Instead, it is a challenge to whether the trial court's classification can be sustained based upon the undisputed facts gleaned from evidence presented. Stated differently, the dispute centers on the legal effect of settled facts. Under these circumstances, our review is *de novo*. *In re Marriage of Abrell*, 386 Ill. App. 3d 718, 724, 898 N.E.2d 1163, 1169 (2008) ("[W]hen no disputed facts or issues of witness credibility are at issue, a *de novo* standard of review will be applied.").

¶ 40     Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(a) (West 2018)) begins by defining marital property as "all property *** acquired by either spouse subsequent to the marriage." Section 503 then lists exceptions which are known as nonmarital property. 750 ILCS 5/503(a)(1)-(8) (West 2018). Among those exceptions is "income from [property acquired before the marriage] if the income is not attributable to the personal effort of a spouse." 750 ILCS 5/503(a)(8) (West 2018). Where it is shown the property was acquired after the marriage, there is a statutory presumption the property is marital, and the party claiming the property as nonmarital has the burden to prove by clear and convincing evidence the property falls within one of the exceptions. 750 ILCS 5/503(b)(1) (West 2018).

¶ 41     Here, the rental income from petitioner's nonmarital property was acquired during the marriage. Accordingly, there is the statutory presumption the income is marital, and petitioner has the burden to prove by clear and convincing evidence the income "is not attributable to the personal effort of a spouse." The evidence shows petitioner handled all the financial matters related

- 10 -

to the property, respondent handled most of the maintenance related to the property, and both parties showed the property to prospective tenants and signed leases. Regardless of whether the relevant inquiry concerns the personal effort of the owning spouse, the non-owning spouse, or either spouse, we find petitioner has not proven by clear and convincing evidence the rental income was "not attributable to the personal effort of a spouse." 750 ILCS 5/503(a)(8) (West 2018). Therefore, we find the trial court erroneously classified the rental income as nonmarital property. See *In re Marriage of Schmitt*, 391 Ill. App. 3d 1010, 1018, 909 N.E.2d 221, 229 (2009) ("Section 503(a)(8) of the Act provides that income from nonmarital property of a spouse becomes marital income unless the spouse claiming that it is nonmarital proves by clear and convincing evidence that the income is 'not attributable to the personal efforts of [the] spouse.' ").

¶ 42        Second, respondent complains about the trial court's classification of his Roth IRA as marital property. Specifically, respondent argues the court's classification was erroneous given the evidence indicating he owned the account prior to the marriage. Petitioner does not respond to respondent's argument.

¶ 43        Again, respondent's complaint is not a challenge to the evidence presented. Instead, it is a challenge to whether the trial court's classification can be sustained based upon the undisputed facts gleaned from evidence presented. Under these circumstances, our review is *de novo*. *Marriage of Abrell*, 386 Ill. App. 3d at 724.

¶ 44        Nonmarital property includes "property acquired before the marriage." 750 ILCS 5/503 (West 2018). However, there is a statutory presumption that any IRA "participated in by either spouse after the marriage and before a judgment of dissolution of marriage *** [is] presumed to be marital property." 750 ILCS 5/503(b)(2) (West 2018).

¶ 45        Here, the evidence concerning respondent's Roth IRA was limited—it indicates

respondent owned the account prior to the marriage, the value of the account increased during the marriage, and respondent did not know when he last contributed to the account. The evidence was seemingly limited because petitioner did not object to respondent being accorded the account. While the trial court ostensibly inferred from the limited evidence that respondent participated in the IRA during the marriage, we find that inference, which again petitioner does not present any argument supporting on appeal, unnecessary and unwarranted. Given the arguments, or lack thereof, by petitioner, we find the trial court erroneously classified respondent's Roth IRA as marital property.

¶ 46        Third, respondent complains about the trial court's classification of the entirety of his SURS account as marital property. Specifically, respondent argues the court's classification was erroneous given the evidence indicating service credit was earned prior to the marriage. Petitioner does not respond to respondent's argument.

¶ 47        Again, respondent's complaint is not a challenge to the evidence presented. Instead, it is a challenge to whether the trial court's classification can be sustained based upon the undisputed facts gleaned from evidence presented. Under these circumstances, our review is *de novo*. *Marriage of Abrell*, 386 Ill. App. 3d at 724.

¶ 48        It is well established that any doubts as to the classification of property should be resolved in favor of finding the property to be marital. *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 41; *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 51, 56 N.E.3d 525; *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 45, 968 N.E.2d 115.

¶ 49        Here, setting aside the fact respondent agreed with the court's classification of his SURS account in his motion to reconsider, the evidence indicating respondent had 20.5 years of service credit does not, by itself, preclude a finding that the account is marital property. Respondent

presented no evidence as to how the service credit was acquired. Without more information, there are doubts as to the proper classification of the property, which are resolved in favor of finding the property to be marital. Therefore, we find the trial court did not err when it classified the entirety of the SURS account as marital property.

¶ 50       Fourth, respondent complains about the trial court's valuations of the marital residence and vehicles. Specifically, respondent argues the court's valuations were erroneous given the evidence he presented. In response, petitioner contends the court's valuations were appropriate given the evidence she presented.

¶ 51       Respondent's complaints are challenges to the evidence presented. They are challenges to whether the trial court's valuations can be sustained based upon the evidence presented. Under these circumstances, we review the trial court's valuations to determine whether they are against the manifest weight of the evidence. See, *e.g.*, *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 703-04, 843 N.E.2d 478, 485-86 (2006).

¶ 52       "It is the responsibility of the trial court to resolve conflicting testimony concerning the valuation of marital assets." *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 663, 895 N.E.2d 1025, 1047 (2008). A trial court's valuation will not be reversed on appeal unless " 'the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence.' " *Id.* (quoting *In re Marriage of Matchen*, 372 Ill. App. 3d 937, 946, 866 N.E.2d 683, 691 (2007)).

¶ 53       Here, the trial court received conflicting evidence concerning the valuations of the marital residence and vehicles and, ultimately, relied upon the evidence presented by petitioner. Respondent does not argue petitioner's evidence was incredible; instead, he simply argues the trial court should have reached a valuation based upon his evidence. Considering the evidence and

arguments presented, we cannot say the court's valuations based upon petitioner's evidence were against the manifest weight of the evidence.

¶ 54　　　　Fifth, respondent complains about the trial court's valuations of the parties' retirement accounts. Specifically, respondent argues the court erred in valuing the parties' respective retirement accounts based on information from different periods. Petitioner does not respond to respondent's argument.

¶ 55　　　　Respondent's complaint is not a challenge to the evidence presented. Instead, it is a challenge to whether the trial court's valuations can be sustained where they are based on information from different periods. Under these circumstances, our review is *de novo.*

¶ 56　　　　Section 503 of the Act states a trial court "has the discretion to use the date of the trial or such other date as agreed upon by the parties, or ordered by the court within its discretion, for purposes of determining the value of assets or property." 750 ILCS 5/503(f) (West 2018).

¶ 57　　　　Here, the trial court, recognizing the parties had presented valuations of the retirement accounts from different periods, permitted the parties to submit a list of agreed-upon valuations. For reasons unknown to this court, the parties did not submit agreed-upon valuations, which resulted in the court having to value the retirement accounts based on information from different periods. Under these circumstances, we cannot say the trial court committed error when it valued the parties' respective retirement accounts based on information from different periods.

¶ 58　　　　Last, respondent complains about the trial court's refusal to offset petitioner's share of the marital property by the rental income lost from the two marital properties. Specifically, respondent argues petitioner's share of the marital property should have been offset because it was her unilateral decision to not continue to rent out the properties which resulted in the lost income. In response, petitioner contends she had a valid reason not to continue to rent out the properties.

¶ 59 Respondent's complaint is a challenge to the ultimate division of the marital property. It is a challenge to whether the trial court's division can be sustained based upon the undisputed facts. Under these circumstances, we review the trial court's division to determine whether it resulted from an abuse of discretion. See, *e.g.*, *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 648, 913 N.E.2d 1077, 1084 (2009).

¶ 60 An "equitable division depends on more than merely an analysis of dollars and cents." *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 22, 14 N.E.3d 524. A trial court's division of marital property will not be reversed on appeal unless "no reasonable person would take the view adopted by the trial court." *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 161, 838 N.E.2d 282, 297 (2005).

¶ 61 Here, the evidence shows respondent's decision not to rent out the marital investment properties during the pendency of the dissolution proceeding was based upon the advice of her listing agent, who testified and confirmed the occupancy by tenants made showings difficult. In addition, the evidence indicates the vacatur of the tenants allowed the parties to address the suggestions which the listing agent believed would make the properties sell faster. From this evidence, we cannot say the trial court abused its discretion when it refused to offset petitioner's share of the marital property by the lost rental income.

¶ 62 In summary, all of respondent's contentions of error are meritless except for his contentions concerning the trial court's classification of the rental income from petitioner's nonmarital property and his Roth IRA. Having concluded the court should have classified the rental income as marital property, we find the matter must be remanded for the court to vacate its award of a $20,000 credit to petitioner for her payment of the parties' marital debt with the rental income and for the court to determine, either through a stipulation of the parties or a limited

evidentiary hearing, the net income realized from 409 Irvine and whether any of that income was used to pay for marital expenses. Having also concluded the court should have classified respondent's Roth IRA as nonmarital property, the court on remand should award respondent that account. After doing the above, the court should issue a new equitable division of the marital property.

¶ 63        In reaching this decision, we choose to comment on the property issues presented in this case. The parties did not succinctly explain the issues in this case to the trial court or this court. This court, and undoubtedly the trial court who drafted a 17-page opinion and order followed by a 7-page opinion and order, dedicated substantial time and resources to deciphering the issues presented. A more careful effort to set forth the issues before the trial court would have avoided parts of this appeal and ultimately resulted in outcomes acceptable by the parties.

¶ 64                              III. CONCLUSION

¶ 65        We affirm in part, reverse in part, and remand with directions.

¶ 66        Affirmed in part and reversed in part; cause remanded with directions.